# 24-11487

# United States Court of Appeals
### *for the*
# Eleventh Circuit

LUIS RODRIGUEZ, *et al.*,

*Plaintiffs/Appellants,*

– v. –

IMPERIAL BRANDS PLC, WPP PLC, *et al.*,

*Defendants/Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:20-cv-23287-DPG
(Hon. Darrin P. Gayles)

# INITIAL BRIEF OF APPELLANTS

James L. Berenthal, Esq.
David W. Berenthal, Esq.
BERENTHAL & ASSOCIATES, P.A.
45 East 72nd Street, Suite 5-C
New York, New York 10021
(212) 302-9494

Charles M. Auslander
John G. Crabtree
Brian C. Tackenberg
CRABTREE & AUSLANDER
240 Crandon Boulevard, Suite 101
Key Biscayne, Florida 33149
(305) 361-3770

Francisco Ramon Rodriguez
Paulino Antonio Núñez Jr.
RODRIGUEZ TRAMONT & NÚÑEZ P.A.
255 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
(305) 350-2300

*Counsel for Plaintiffs/Appellants*

*Counsel for Plaintiffs/Appellants*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 810695)

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, Appellants Luis Rodriguez, et al., certify the following persons and entities may have an interest in this case.

1. Akerman, LLP

2. Allen & Overy LLP

3. Auslander, Charles M. (counsel for Appellant)

4. BCW, LLC

5. Berenthal & Associates, P.A.

6. Berenthal, David W.

7. Berenthal, James L.

8. Carver, Christopher S.

9. Casamassima, Chris

10. Cohen & Wolfe, LLC

11. Conroy, Christina

12. Corporación Habanos, S.A.

13. Crabtree, John (counsel for Appellant)

14. Crabtree & Auslander, LLC

15. Davies, Andrew Rhys

16.    Davies, Christopher

17.    Etra, Jonathan

18.    Forns, Alfredo Ramon

19.    Frank, Lindsey

20.    Freyre, Pedro

21.    Gayles, The Honorable Darrin P., U.S.D.C., S.D. Fla.

22.    Harris, Jr., Charles Murray

23.    Imperial Brands PLC

24.    Krinsky, Michael R.

25.    Landa, Maria Teresa

26.    Lieb, Stephane Crane

27.    Lutkenhaus, Jessica

28.    Nelson Mullins

29.    Núñez, Paulino A.

30.    Ormand, Justin L.

31.    Otazo-Reyes, The Honorable Alicia M. U.S. Magistrate Judge, S.D. Fla.

32.    Pensyl, Bradley S.

33.    Rabinowitz, Boudin, Standard, Krinsky & Lieberman

34.    Raymond, Mark. F

35. Rodriguez, Ramon Alberto

36. Raul Lorenzo Rodriguez

37. Rodriguez, Francisco Ramon

38. Rodriguez, Luis Manuel

39. Rodriguez, Maria Teresa

40. Rodriguez Tramont & Núñez P.A.

41. Surgeon, Naim S.

42. Tackenberg, Brian C. (counsel for Appellant)

43. Todd, Ryan K.

44. Trenam Kemker Scharf Barkin

45. Wilmer Cutler Pickering Hale and Dorr LLP

46. WPP, PLC (NYSE symbol WPP)

47. Young & Rubicam LLC (a wholly-owned subsidiary of WPP, PLC)

## **11th Cir. R. 26.1-3 Certification**

Dated: August 16, 2024

Respectfully submitted,

*/s/ Charles M. Auslander*
Charles M. Auslander
Florida Bar No. 349747
Crabtree & Auslander
240 Crandon Boulevard,
Suite 101
Key Biscayne, Florida 33149
Tel: (305) 361-3770
causlander@crabtreelaw.com

*Counsel for Appellants*

**STATEMENT REGARDING ORAL ARGUMENT**

This case involves application of the law of personal jurisdiction based on nationwide minimum contacts and the effects test. Given the breadth and detail of the factual allegations associated with that issue, oral argument may assist the Court in considering the district court's misapprehension of the personal jurisdiction issue, resulting in the dismissal of this lawsuit.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................i

TABLE OF AUTHORITIES.............................................................v

STATEMENT OF SUBJECT-MATTER AND
APPELLATE JURISDICTION .......................................................1

STATEMENT OF THE ISSUE........................................................2

STATEMENT OF THE CASE .........................................................3

    I.    Course of Proceedings and Disposition in the
        District Court ................................................................3

        A.    Introduction.......................................................3

        B.    Course of Proceedings ........................................5

            1.    Referral to the Magistrate Judge –
                 venue dismissal ..........................................5

            2.    Further proceedings – reversal of the
                 venue dismissal as to Imperial Brands
                 and WPP........................................................5

            3.    Subsequent proceedings before the
                 Magistrate Judge on the motions to
                 dismiss ........................................................5

        C.    Disposition by the district court ...........................10

    II.    Statement of the Facts .................................................10

        1.    The Liberty Act .................................................10

        2.    The Second Amended Complaint..........................12

            i)    Confiscation by the Cuban Government
                 and the Rodriguez Family's Liberty Act
                 Claim........................................................12

            ii)    Trafficking by Imperial and WPP ..................14

iii)      Knowing and willful trafficking by use of the confiscated Property by Imperial and WPP ......................................................16

STANDARD OF REVIEW ...........................................................18

SUMMARY OF THE ARGUMENT ...............................................19

ARGUMENT ...............................................................................21

I.      THE DISTRICT COURT ERRED IN DISMISSING THE SECOND AMENDED COMPLAINT, WHICH PROPERLY ALLEGED PERSONAL JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(k)(2) ...................................................................21

A.      The Second Amended Complaint detailed the Liberty Act cause of action and the basis for personal jurisdiction in the United States against WPP and Imperial ..................................21

1)      The substance of the cause of action ...........21

2)      The Second Amended Complaint details the basis for personal jurisdiction ...............22

B.      Personal jurisdiction exists under both the minimum contacts and effects test consistent with Imperial and WPP's fundamental right to due process or "fair play" in exercising jurisdiction over them in the nationwide forum .........................................................26

1)      "Legislative jurisdiction" for the cause of action is based on the Liberty Act.................26

2)      Rule 4(k)(2) provides for personal jurisdiction over WPP and Imperial based on their contacts with the United States forum.............................................29

(i)      Minimum contacts were satisfactorily alleged............................31

(ii) The effects test was also
satisfactorily alleged.............................37

3) It is "fair play" to subject both WPP and
Imperial to the personal jurisdiction of
the United States courts .............................43

C. The Rodriguez Family preserves for review
the question of whether this Court's
precedent correctly holds that the exercise of
personal jurisdiction under the Fifth
Amendment is properly constrained by the
same standards imposed on personal
jurisdiction sourced under the Fourteenth
Amendment ........................................................46

II. THE MAGISTRATE JUDGE ERRED IN FINDING
THAT THE RODRIGUEZ FAMILY FAILED TO
STATE A CLAIM UNDER THE LIBERTY ACT.................48

A. Dismissal is improperly founded on a statute
of repose...........................................................49

B. The Second Amended Complaint properly
alleges trafficking in the relevant time period........52

III. THE MAGISTRATE ERRED IN FINDING THAT THE
RODRIGUEZ FAMILY FAILED TO PLEAD THAT
THE DEFENDANTS ACTED "KNOWINGLY AND
INTELLIGENTLY" ........................................................57

CONCLUSION .......................................................................59

CERTIFICATE OF COMPLIANCE ...............................................60

CERTIFICATE OF SERVICE .......................................................61

**Page(s)**

**Cases:**

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
902 F.2d 829 (11th Cir. 1990)..............................................3, 6

*Calder v. Jones,*
465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984) .........38

*Courboin v. Scott,*
596 F. App'x 729 (11th Cir. 2014) ....................................10

*Cuenca v. Rojas,*
99 F.4th 1344 (11th Cir. 2024)..........................................19

*Del Valle v. Trivago GMBH,*
56 F.4th 1265 (11th Cir. 2022).............. 12, 28, 35, 38, 39, 54

*Devas Multimedia Private Ltd. v. Antrix Corp.,*
2023 WL 4884882 (9th Cir. Aug. 1, 2023), *rehearing en
banc denied,* 91 F.4th 1340 (9th Cir. 2024) .........................48

*Devas Multimedia Private Ltd. v. Antrix Corp.,*
2023 WL 4884882 (9th Cir. Aug. 1, 2023) ..........................47

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
46 F.4th 226 (5th Cir. 2022) ............................................47

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
592 U.S. 351, 141 S. Ct. 1017, 209 L.Ed.2d 225 (2021) .......36

*Fraser v. Smith,*
594 F.3d 842 (11th Cir. 2020)...........................................30

*Friends of Everglades v. S. Fla. Water Mgmt. Dist.,*
570 F.3d 1210 (11th Cir. 2009).........................................55

*Fuld v. Palestine Liberation Org.,*
82 F.4th 74 (2d Cir. 2023)................................................46

*\*Chief Authorities are marked with an asterisk.*

*Fuld v. Palestine Liberation Organization,*
101 F.4th 190 (2d Cir. 2024)..........................................................47

*Garcia-Bengochea v. Carnival Corp.,*
57 F.4th 916 (11th Cir. 2023) ....................................................11, 27

*Havana Docks Corp. v. Carnival Corp.,*
592 F. Supp. 3d 1088 (S.D. Fla. 2022), *motion to certify appeal denied*, 19-CV-21724, 2022 WL 1522007 (S.D. Fla. May 13, 2022) ....................................................................57

*Havana Docks Corp. v. Carnival Corp.,*
19-CV-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020) ....................................................50

*HB Productions, Inc. v. Faizan,*
603 F. Supp. 3d 910 (D. Haw. 2022) ...........................38, 39, 41

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.,*
43 F.4th 1303 (11th Cir. 2022)......... 26, 30, 34, 35, 36, 37, 46

*Heyman v. Cooper,*
31 F.4th 1315 (11th Cir 2022)...........................................58

*Hill v. Morehouse Med. Associates, Inc.,*
02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) .................................................56

*Licciardello v. Lovelady,*
544 F.3d 1280 (11th Cir.2008)......................................38, 45

*Louis Vuitton Malletier, S.A. v. Mosseri,*
736 F.3d 1339 (11th Cir. 2013)..............................32, 38, 45

*Madara v. Hall,*
916 F.2d 1510 (11th Cir. 2023)........................................19

*McCall v. Zotos,*
Case No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023).................................................19

*MSP Recovery Claims, Series LLC v. Metro Gen. Ins. Co.,*
40 F.4th 1295 (11th Cir. 2022)........................................49

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
558 F.3d 1210 (11th Cir. 2009)........................................30

*Posner v. Essex,*
178 F.3d 1209 (11th Cir. 1999) ............................................10

*\*SkyHop Techs., Inc. v. Narra,*
58 F.4th 1211 (11th Cir. 2023).................... 18, 19, 26, 28, 37
38, 41, 42, 43, 44, 45, 49, 57

*United States v. Ivanov,*
175 F. Supp. 2d 367 (D. Conn. 2001) ..................................39

*Wainberg v. Mellichamp,*
93 F.4th 1221 (11th Cir. 2024)............................................51

*Waite v. All Acquisition Corp.,*
901 F.3d 1307 (11th Cir. 2018) ...........................................35

*Waldman v. Palestine Liberation Org.,*
82 F.4th 64 (2d Cir. 2023)..................................................46

**Statutes & Other Authorities:**

22 U.S.C. §§ 6021 *et seq.* .......................................................1, 3

22 U.S.C. § 6022.................................................................11

22 U.S.C. § 6023.................................................................57

22 U.S.C. § 6023(13)........................................ 12, 22, 28, 33

22 U.S.C. § 6023(13)(A).................................................54, 57

22 U.S.C. § 6023(13)(A)(iii) ..............................................23

22 U.S.C. § 6081(6)(B)....................................................11, 27

22 U.S.C. § 6082(a)(1)(A) ...............................................11, 27

22 U.S.C. § 6084.................................................................49

28 U.S.C. § 1291............................................................... 1

28 U.S.C. § 1331............................................................... 1

*Federal Rule of Civil Procedure 4(k)(2)     2, 4, 7, 8, 18, 19, 21, 26,
29, 30, 43, 46, 48

31 C.F.R § 515.206.............................................................28

31 C.F.R. §§ 515.201 *et seq.*......................................................................22

31 C.F.R. § 515.578(a) ..............................................................................28

31 C.F.R. § 515.578(b)(1) .........................................................................28

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This is an appeal from a final order; 28 U.S.C. §§ 1291 gives the Court jurisdiction to hear it. Federal subject matter jurisdiction is authorized under 28 U.S.C. § 1331 and 22 U.S.C. §§ 6021, *et seq.*, the Cuban Liberty and Democratic Solidarity Act, also known as the Helms Burton Act.

## STATEMENT OF THE ISSUE

The Appellants, Luis Rodriguez, et al., brought a claim under the Cuban Liberty and Democratic Solidarity Act, also known as the Helms Burton Act, seeking redress for the trafficking of property that has been confiscated by the Cuban government.

The issue on appeal is:

Whether the Second Amended Complaint sufficiently alleges personal jurisdiction over the Defendants Imperial Brands plc and WPP plc based on either the nationwide "effects" or "minimum contacts" standards, as applied under Federal Rule of Civil Procedure 4(k)(2) and the Fifth Amendment to the U.S. Constitution, consistent with the purpose of the Cuban Liberty and Democratic Solidarity Act to ensure that United States citizens are protected from and compensated for the statutory violation of trafficking in confiscated property.

## STATEMENT OF THE CASE

## I. Course of Proceedings and Disposition in the District Court.

### A. Introduction.

Plaintiffs, now Appellants (the Rodriguez Family), are family members who are descendants of Ramon Rodriguez Gutierrez (RRG), who through a corporation (RRHSC) owned the trafficked "Property" at issue. RRHSC and the Property were confiscated by the Cuban regime of Fidel Castro in 1961 (208-1-¶1).[1] The Rodriguez Family are U.S. Nationals who own the claim ("Claim") to that Property under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. §§ 6021, *et seq.*, (the Liberty Act) also known as the Helms Burton Act or HBA. (208-2-¶¶3-4); (208-4-5 and ¶¶4, 29-30, 32-33, 72, 76). "Trafficking" in that property violates The Liberty Act. (208-2,3-¶4).

---

[1] This statement of the case is derived from the factual allegations of the Rodriguez Family's Second Amended Complaint, which should be accepted as true on review of an order of the district court dismissing the case for lack of personal jurisdiction over Defendants Imperial and WPP. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).

Defendant, now Appellee, Imperial Brands plc (Imperial), is a British multinational company that purchased a Cuban company named "Altadis S.A.," which then held a fifty percent interest in Corporación Habanos, S.A., (Habanos). As a result, Imperial entered into a joint venture for profit with the Cuban government. (208-3-¶5).

Defendant WPP plc ("WPP"), together with its subsidiaries, Young & Rubicam LLC ("Y&R), and BCW LLC, a/k/a Burson Cohn & Wolfe ("BCW") were referred to as the "WPP Defendants" in the Second Amended Complaint. (208-5-7-¶¶12-16).

Imperial Brands and the WPP Defendants moved to dismiss the Second Amended Complaint. *See* (225-1, 226-1, 227-1, 229-1). The Rodriguez Family did not contest the Magistrate Judge's recommendation to dismiss Habanos, (307-3), which was ultimately dismissed by the district court on that ground. (360-3).

At the final hearing on personal jurisdiction, the Rodriguez Family did not oppose dismissal of subsidiaries Y&R and BCW. (253-199). The Court ultimately dismissed remaining defendants WPP and Imperial for lack of personal jurisdiction. (360-3). This appeal is principally about whether there is personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) for this trafficking lawsuit to

4

remedy the illegal profiteering by Imperial and WPP in the Rodriguez Family Property.

## B. Course of Proceedings.

### 1. Referral to the Magistrate Judge – venue dismissal

The district court referred the matter to the Magistrate Judge for report and recommendation. (286-1). After a first round of briefing, the Magistrate Judge recommended that the entire case should be dismissed for lack of venue as to all defendants. (286-1-2).

### 2. Further proceedings – reversal of the venue dismissal as to Imperial Brands and WPP.

The Rodriguez Family filed objections with respect to the venue dismissal of Imperial and the WPP Defendants. (294-1 *et seq.*). The district court rejected that part of the recommendation and remanded the matter to the Magistrate Judge for further consideration of the motions to dismiss pursued by Imperial and the WPP Defendants. (307-5,6).

### 3. Subsequent proceedings before the Magistrate Judge on the motions to dismiss:

WPP's motion to dismiss contended, in general, that there were insufficient minimum contacts alleged in the Second Amended

Complaint to establish personal jurisdiction. (345-8,9). As the Magistrate Judge summarized, Imperial contended that it had no minimum contacts, that WPP's alleged minimum contacts could not be imputed to it, and that WPP's alleged minimum contacts were insufficient to establish personal jurisdiction over Imperial. (345-8,9) (discussing, *e.g.*, 319-7,8).

Jurisdictional discovery was taken on issues raised by WPP. *See* (286-2-4), An explanation of the intricacies of that jurisdictional discovery is unnecessary to the resolution of this appeal, as the Magistrate Judge conducted a non-evidentiary hearing on the renewed motions to dismiss filed by Imperial and the WPP Defendants against the Rodriguez Family's Second Amended Complaint. (336-1; 341-1, *et seq.* ). Accordingly, the allegations of the Second Amended Complaint and its exhibits (208-1 *et seq.*), are facts to be taken as true in this record.[2]

---

[2] "The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d at 855. The Rodriguez Family established a prima facie case of personal jurisdiction, which is all that is required when the district court does not conduct a discretionary evidentiary hearing on lack of personal jurisdiction. *Id.*

In recommending dismissal of the Second Amended Complaint for lack of personal jurisdiction, the Magistrate Judge stated: "Therefore, the undersigned limits the current jurisdictional analysis to whether the Second Amended Complaint sufficiently alleges personal jurisdiction over WPP and Imperial pursuant to Rule 4(k)(2)." (345-9).[3]

At this non-evidentiary hearing conducted on the issue of personal jurisdiction under Rule 4(k)(2) over WPP and Imperial, the Rodriguez Family limited their argument for specific personal jurisdiction to "federal long arm jurisdiction," under the Fifth Amendment as applied by Fed. R. Civ. P. Rule 4(k)(2), premised on WPP and Imperial's nationwide contacts under Rule 4(k)(2). (341-6, 156; 345-9) "Accordingly, the [Magistrate Judge] limit[ed] the Rule 4(k)(2) analysis to assessing whether Plaintiffs have sufficiently alleged

---

[3] As discussed by the Magistrate, Y&R and BCW had submitted affidavits regarding Spanish subsidiaries they claimed had created the web content at issue, assertedly to eliminate "any connection between" the cause of action and the WPP Defendant's contacts. (345-13 at n.6). But at the hearing, the Rodriguez Family "clarified that [they] are not concerned about the Spanish entity. [They] are concerned about the conduct of WPP." (341-199:11-13). "Therefore, [the Magistrate Judge] limit[ed] [the court's] analysis to WPP's activities." (345-13 at n.6). The affidavits played no part in the Magistrate Judge's recommended ruling on personal jurisdiction.

specific personal jurisdiction over Defendants [Imperial and WPP plc] under Rule 4(k)(2)." (345-12, n.8).

The Magistrate Judge first found that because WPP and Imperial had not stated that they were anywhere amenable to general jurisdiction, "the first requirement for application of Rule 4(k)(2) to [them] is satisfied." (345-11).

But the Magistrate Judge was unsatisfied that the remaining elements for personal jurisdiction were established over WPP and Imperial, likening the allegations of the Second Amended Complaint to the mere existence of a website that is visible in the forum and provides information about a company's products. (345-14).

According to the report and recommendation, these allegations failed to show that WPP's online activity was aimed at the United States. (345-14): "[T]he Second Amended Complaint fails to sufficiently allege minimum contacts as well as that the 'effects' of WPP's conduct were felt in the United States .... [and] such failure extends to Imperial, given Plaintiffs' imputation theory." (345-15). The Magistrate Judge recommended granting both Imperial's and WPP's motions to dismiss for lack of personal jurisdiction. (345-15).

The Magistrate Judge also recommended that the Second Amended Complaint was time-barred, because the action was brought in 2020, concluding that a repose period extended only to 2018. (345-17). In this respect, the Magistrate Judge found that the allegations against (former) party Habanos ended prior to 2018. Moreover, the "connection between" non-party Tabacuba (the Cuban government's tobacco monopoly company that was Imperial's joint venture partner in Habanos) and Imperial's use of the Rodriguez Property and WPP's jurisdictional contacts was "far too attenuated" in alleging only that Imperial "benefitted from" Tabacuba's use of the property. (345-17-18).

But, to the contrary, and as detailed below, the Second Amended Complaint provides detailed allegations regarding Tabacuba and its connections to both Imperial and WPP. (*E.g.*, 208-4-7, 14, 25-¶¶ 11, 13, 15, 16 18, 20, 44, 80).

A further recommendation was made to dismiss the Second Amended Complaint based on its failure "to establish that Defendants acted 'knowingly and intentionally' with respect to the Property at issue in Plaintiffs' Title III claim." (345-21-22). This recommended ruling stemmed from the supposed failure of the

9

allegations to specify that the Rodriguez Family's ancestor was known to be tied to the Property. (345-21).

## C. Disposition by the district court.

The district court adopted that part of the Report finding a lack of personal jurisdiction over Imperial and the WPP Defendants, dismissing the Second Amended Complaint without prejudice. (360-3):

> Upon *de novo* review, the Court agrees with Judge Otazo-Reyes' well-reasoned analysis and conclusion that the exercise of personal jurisdiction over Imperial and WPP Defendants would be improper. Given that the Court previously dismissed the claims against Defendant Habanos on improper venue grounds and because the Court finds that it lacks jurisdiction over the remaining defendants, it need not reach Judge Otazo-Reyes' additional recommendations. *See Posner v. Essex,* 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action."); *Courboin v. Scott,* 596 F. App'x 729, 735 (11th Cir. 2014) (vacating portion of district court's order addressing merits after finding lack of personal jurisdiction). Defendants' Joint Motion to Dismiss is therefore denied as moot.

## II. Statement of the Facts.

### 1. The Liberty Act:

The Rodriguez Family's claim is asserted under Title III of the Liberty Act, which: "aims to deter 'trafficking in confiscated property'

10

with the purpose of 'protect[ing] the claims of United States nationals who had property wrongfully confiscated by' the Cuban government." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 920 (11th Cir. 2023) (citing 22 U.S.C. § 6081(6)(B)).

An express purpose of the Liberty Act is "to protect nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. §6022. The Act establishes a "private right of action for 'any United States national who owns the claim to [confiscated property]' against 'any person that … traffics in [such] property.'" 22 U.S.C. § 6082(a)(1)(A); *see also Garcia-Bengochea*, 57 F.4th at 920–21. Specifically:

> Under Title III, a person "traffics" in confiscated property if that person knowingly and intentionally
> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,
> without the authorization of any United States national who holds a claim to the property.

*Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1270–71 (11th Cir. 2022) (citing 22 U.S.C. § 6023(13)).

**2. The Second Amended Complaint:**

*i) Confiscation by the Cuban Government and the Rodriguez Family's Liberty Act Claim:*

The Rodriguez Family alleges that they are the heirs and successors of Ramon Rodriguez Gutierrez (RRG), who through a corporation (RRHSC), owned the Property at issue, consisting of a factory building at the corner of Calle 23 y 16 (23rd Street and 16th), and an adjacent structure including a suite of executive offices and a six-story tower, all of which comprise the Property. (208-1-2-¶¶1-2). In 1961, as part of its takeover of the entire tobacco industry, the Castro government confiscated ownership of RRHSC and the Property. (208-2-¶¶3, 74 and n. 37; 208-5).

The Rodriguez Family are United States nationals who own the claim ("Claim") to the Property under the Liberty Act. (208-4-5 and ¶¶4, 29-30, 32-33, 72, 76). The Cuban government took the Property without paying compensation to the Rodriguez Family or to their predecessor, RRG. Nor has the Claim to the Property been settled

12

through any accepted claims settlement procedure. (208-23-24-¶¶ 75, 78-79).

The Property has been used at least since 2010 by Cuba and entities it controls for the management, production, storage, and shipping of millions of hand-rolled cigars and other tobacco products manufactured at the Property, or manufactured at other nearby factories, and stored, processed or shipped from the Property. (208-5-¶¶ 11-12; 78-79). Since then, the unauthorized and continuous use of the Property has included the management of the day-to-day business of all or some Cuban tobacco products from offices maintained in the Property by Tabacuba, the Cuban government tobacco monopoly company. (208-5-¶¶ 11-12).

Tabacuba's role is detailed in the Second Amended Complaint. (208-4,6-¶¶8,18). Some or all of the Cuban tobacco in the Cuban cigar products manufactured by Habanos—and advertised or promoted by WPP, Y&R and BCW—was purchased, managed and resold by Tabacuba from Tabacuba's offices at the RRHSC Property. (208-5-¶12).

13

*ii) Trafficking by Imperial and WPP:*

Imperial, through its subsidiaries, participated in a joint venture with Tabacuba in Habanos. Jurisdiction over Imperial is based on the trafficking of the Rodriguez Family's confiscated Property completed in the United States by the WPP Defendants. (208-13-14-¶44) The trafficking at issue was completed in the United States by WPP through "US Services," a phrase defined in the Second Amended Complaint. (208-16-¶54). WPP plc and the WPP Group deliberately provided those US Services to all WPP companies involved in the trafficking. (*Id.*).

WPP is a foreign corporation. (208-11-¶ 36). WPP itself has few if any direct employees. (208-15-¶ 46). The Rodriguez Family alleges that WPP uses employees of various WPP affiliates, but that WPP centrally coordinates "financial matters, reporting, control, treasury, tax, mergers, acquisitions, investor relations, legal affairs and internal audit" for its many affiliates. (208-15-¶ 46 n. 26) (citing SEC Cease-and-Desist Order)).

Multiple WPP subsidiaries, including Y&R, BCW, and another WPP affiliate, Ogilvy, together with WPP, are part of a complex network that share resources and operate as a single entity. (208-15-

14

¶ 46). The WPP affiliates, including WPP, BCW and Y&R, act together as an unincorporated group that operates as a single company, (the "WPP Group"). (208-8-¶¶ 21-23; 208-15-16-¶¶ 46-54). Further, the WPP Group, including Y&R, BCW, and Ogilvy, together with WPP:

> (1) ***purchase Internet, email, and other networking and telecom services in the United States (“US Services***”), including the "YR.com," "BM.com," and "Ogilvy.com" Internet domains, social media "portals" operated by Twitter, Instagram, and YouTube, networking and other services provided through Microsoft;
> (2) ***distribute US Services among WPP, Y&R, BCW, Ogilvy, and other affiliates in the WPP Group***; and
> (3) ***market and sell WPP Group products and services including through the use of US Services***, **to clients worldwide, including Habanos, the Cuban Joint Ventures and other Cuban Government entities.**

(208-16-¶54) (emphasis added).

WPP structured its back-office operations through US Services to advertise, market, promote and sell Cuban tobacco products for Habanos and the Cuban Joint Ventures, in which Imperial was a joint venture partner. *Id.* Beginning no later than 2017, the WPP Group, nominally acting through Y&R and BCW, assisted in setting up, or directly set up, sponsored official "portals" to market Cuban tobacco products on the U.S.-based social media platforms Twitter, YouTube, and Instagram. (208-8-¶22). The WPP Group also set up multiple file

share sites on internet domains nominally controlled by Y&R (YR.com) or by BCW (BM.com). (208-8-¶21).

In addition, the WPP Group used multiple email addresses running through U.S.-based servers, including email running through the servers nominally controlled by Y&R (YR.com) and Ogilvy (Ogilvy.com). (208-8-¶23). These WPP Defendants acted as agents of Imperial or Habanos for the marketing, advertising, and promotion of Cuban tobacco products and the Habanos brand name. (208-5-¶14).

Significantly, WPP, through the WPP Group that it controls, including BCW and Y&R, used US Services, including Internet, email, and other networking and telecom services, the YR.com, BM.com, and Ogilvy.com Internet domains, and U.S. social media portals for the marketing, advertising, and promotion of Cuban tobacco products and the Habanos brand name. (208-16-17,19-¶¶ 54-56, 61).

> *iii) Knowing and willful trafficking by use of the confiscated Property by Imperial and WPP:*

The Second Amended Complaint pleads that WPP:

[C]ontinuously trafficked in the RRHSC Property by marketing and publicizing the Cuban tobacco products

made, stored, shipped or managed from the RRHSC Property since at least 2010 through October 2020.

Beginning no later than 2017, all Defendants further increased their trafficking in the RRHSC Property when the WPP Group, nominally acting through Y&R and BCW, assisted in setting up, or directly set up, sponsored official 'portals" for Imperial and its Cuban Joint Ventures to market Habanos products on the **U.S.-based social media platforms Twitter, YouTube, and Instagram**.

**Imperial knew** in 2007 . . . when it purchased its interest in Habanos and the other Cuban Joint Ventures engaged in trafficking in property confiscated by the Cuban government, **that** ["by operation of the" Liberty Act] **Habanos' operations would be restricted . . . by the nationality of the personnel that Imperial could "involve in" the Cuban cigar business . . . based on trafficking in property confiscated by the Cuban government**.

**WPP similarly knew that its extensive U.S. business activities**, conducted both directly and through its many wholly-owned subsidiaries . . . and the additional subsidiaries owned and controlled by these U.S. companies, would render it "subject to the laws of the US . . . that impose sanctions and regulate the supply of services to certain countries." These laws include, of course, the Liberty Act. WPP nevertheless decided to involve these U.S. subsidiaries, or the subsidiaries of these WPP subsidiaries, in marketing and publicizing products produced at, stored in and shipped from, the confiscated RRHSC Property. WPP thereafter directed or allowed its U.S. subsidiaries . . . to use **US Services**, including YR.com, BM.com, Ogilvy.com, and the social media portals by Twitter, Instagram and YouTube, for the purpose of trafficking in the RRHSC Property, including

providing marketing and advertising services for Habanos through **US Services**.

(208-8-¶¶21-23, 208-16-¶54, 208-18-¶ 60, 208-19-20-¶62, 208-22-23-¶70) (emphasis added).

In fact, Imperial expressly recognized, in its 2007 response to a Securities and Exchange Commission inquiry, that "Altadis' cigar operations in Cuba could be materially limited by the operation of the United States Cuban Assets Control Regulations and [The Liberty Act]. New future sanctions or changes in existing sanctions could further restrict or entirely prevent us … from doing business in or having commercial dealings with certain jurisdictions, including Cuba …" (208-4-3 (Ex. 4A)).

## STANDARD OF REVIEW

This is an appeal from an order granting a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Review is de novo, with the Court "accepting the allegations in the complaint as true." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023).[4]

---

[4] Even where the defense files affidavits conflicting with the complaint's allegations, "the district court must construe all

## SUMMARY OF THE ARGUMENT

The Second Amended Complaint effectively alleges that the Court has personal jurisdiction over WPP and therefore also over Imperial. WPP and Imperial each have minimum contacts with the United States, and the "effects" of WPP's conduct were felt within the United States.

Under Federal Rule of Civil Procedure 4(k)(2), a single tortious act within the United States can satisfy personal jurisdiction under the "effects" test. Here, WPP and hence Imperial availed themselves of the forum sovereign, the United States, by actively engaging in

reasonable inferences in favor of the plaintiff. *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 2023). But as previously discussed, no evidence (including the affidavits filed by WPP) was considered in the dismissal of the Second Amended Complaint for lack of personal jurisdiction over Imperial and WPP.

Underlying findings of fact are reviewed for clear error. *McCall v. Zotos*, Case No. 22-11725, 2023 WL 3946827 at *1 (11th Cir. June 12, 2023). "A factual finding is clearly erroneous when a review of the entire record leaves us with the definite and firm conviction that a mistake has been committed." *Cuenca v. Rojas*, 99 F.4th 1344, 1350 (11th Cir. 2024). But allegations not challenged by defendants "must be accepted as true." *SkyHop Techs.*, 58 F.4th at 1222. No findings of fact could have been made by the district court in this circumstance.

business activity through an intricate and sprawling network of computer, internet, and telecom services.

WPP's U.S.-based computer networking and internet operations were deliberately employed to further the unauthorized use of, and trafficking in, the Rodriguez Family's Property. Simply because the product moved through that trafficking—Cuban grown tobacco and manufactured cigars—cannot be purchased in the United States, does not excuse the active profit-based promotion and advertising of these goods by WPP for its benefit and, in this instance, for Imperial.

The illegality of the ultimate purchase of the product in the United States, based on The Liberty Act and the Cuban Asset Control regulations (CACRs), does not and cannot preclude the assertion of personal jurisdiction over WPP and Imperial based on their use of "US Services," as defined by the Second Amended Complaint, to promote and market these products around the world.

As to the "merits" arguments reached by the Magistrate Judge, but not by the district court, these were errant legal conclusions reached by the former. But the Court should defer those issues to first consideration by the district court, which did not address them

in light of its adopting the recommendation that the case should be dismissed for lack of personal jurisdiction.

**ARGUMENT**

**I.  THE DISTRICT COURT ERRED IN DISMISSING THE SECOND AMENDED COMPLAINT, WHICH PROPERLY ALLEGED PERSONAL JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(k)(2).**

**A.  The Second Amended Complaint detailed the Liberty Act cause of action and the basis for personal jurisdiction in the United States against WPP and Imperial.[5]**

**1)  *The substance of the cause of action:***

This case involves the intentional tort of trafficking in property confiscated by the Cuban government that was rightfully owned by the Rodriguez Family's predecessor, RRG and his company, RRHSC. Under the Liberty Act, the claim to that property is owned by the Rodriguez Family.

This case also involves big business. Imperial owned half of a joint venture in Habanos, which sold Cuban cigars across the globe,

---

[5] We refer interchangeably to the district court and the Magistrate Judge, because the district court affirmed without modification the reasoning of the Magistrate Judge regarding lack of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

although not directly in the United States, because that is prohibited by regulation.

Imperial conducted this commercial activity with the assistance of the WPP Defendants, who intentionally chose to operate an integrated and sprawling information network, based on WPP's use of its U.S. based servers and US Services, as defined by the Second Amended Complaint, including email and other networking and telecom services in the United States, together with U.S. Internet domains, as well as the websites that advertise Habanos' products, through their activity on United States based social media websites. (341-193; 208-8,16,19-23-¶¶22, 23, 54, 61, 62, 70).

### 2) *The Second Amended Complaint details the basis for personal jurisdiction.*

The Rodriguez Family alleged that WPP (and Imperial through WPP acting as its agent for these purposes) used extensive "US Services" to traffic in confiscated Property. (208 at ¶¶ 23, 44-45, 54, 62, 64, 82-83, 92-93, 96-97); *see* 22 USC § 6023(13). WPP and Imperial acted intentionally, violating both the Liberty Act and the Cuban Asset Control Regulations (CACRs), implemented by the Department of Treasury at 31 C.F.R. §515.201 *et seq.* (208-17-19-¶¶

56-57, 61-62). Despite demand by the Rodriguez Family, WPP and Imperial's tortious conduct continued, harming the Rodriguez Family. (208-¶¶ 62, 98-99, D.E. 14-8).

WPP's use of U.S. servers and services, as well as social media platforms and websites accessible in the United States—all in furtherance of the trafficking in the Property through advertising, marketing, and promoting the Cuban tobacco product moved through that trafficking—subjects both WPP and Imperial to personal jurisdiction.

Under 22 U.S.C. §6023(13)(A)(iii), an entity traffics in property when it "causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person.

Thus, WPP is trafficking in the Property when it gets paid to promote and advertise the goods (tobacco), whether or not such goods are purchased from a website. Similarly, Imperial's benefits from WPP's marketing campaign do not require purchases from one of WPP's websites to meet the statutory definition of trafficking.

The Rodriguez Family alleged that multiple WPP subsidiaries, including Y&R, BCW, and another WPP affiliate, Ogilvy, together with WPP, are part of a complex network that share resources and operate as a single entity. Further alleged was that WPP affiliates, including WPP, BCW and Y&R, acted together as an unincorporated group that operates as a single company, (the "WPP Group"). (208-8-¶¶ 21-23; 208-15-16-¶¶ 46-54).

And further, this WPP Group, including Y&R, BCW, and Ogilvy, together with WPP:

> ***purchase Internet, email, and other networking and telecom services in the United States*** ("***US Services***"), including the "YR.com," "BM.com," and "Ogilvy.com" Internet domains, social media "portals" operated by Twitter, Instagram, and YouTube, networking and other services provided through Microsoft;
>
> ***distribute US Services among WPP, Y&R, BCW, Ogilvy, and other affiliates in the WPP Group***; and
>
> ***market and sell WPP Group products and services through the use of US Services*, to clients worldwide**

(208-16-¶54). WPP used the U.S. Services to traffic in the RRHSC Property by advertising, marketing, promoting and selling Cuban tobacco products managed from, stored at, or manufactured at the

24

Property, for Habanos and the Cuban Joint Ventures in which Imperial was a joint venture partner. (*Id.*).

The Second Amended Complaint alleges that Imperial was a joint venture partner and owner of Habanos and other Cuban Joint Venture companies that all profited and otherwise benefitted from the unauthorized use of the confiscated Property. *Id.* (208-6-¶17). Imperial, through its joint venture partner in Habanos—Tabacuba, the Cuban tobacco monopoly company—knew or is charged with knowledge that the Rodriguez Family's "Property" had been confiscated by Cuba in the early 1960s.

Further, since at least 2010, the unauthorized and continuous use of the Property included the management of the day-to-day business of all or some Cuban tobacco products from offices maintained in the Property by Tabacuba. Some or all of the Cuban tobacco in the Cuban cigar products manufactured by Habanos and advertised or promoted by WPP, Y&R and BCW was purchased, managed and resold by Tabacuba from Tabacuba's offices at the Property.

These allegations were not challenged by Imperial and WPP and must be accepted as true in this facial challenge to personal

jurisdiction under Rule 4(k)(2). *See SkyHop Techs.*, 58 F.4th at 1219. (on motion to dismiss for lack of personal jurisdiction factual allegations are accepted as true).

The factual allegations alleged establish that Imperial and WPP directed their activities to the United States, and plainly knew that they could be brought into court in the United States. *See* Second Amended Complaint (208-18-¶ 60, 208-19-20-¶62).

Under Rule 4(k)(2) there is personal jurisdiction to sue Imperial and WPP under the Liberty Act based on the intentional activities of WPP (acting as agent for Imperial) in the United States forum in relation to the profiteering of Imperial's joint venture with Tabacuba.

**B. Personal jurisdiction exists under both the minimum contacts and effects test consistent with Imperial and WPP's fundamental right to due process or "fair play" in exercising jurisdiction over them in the nationwide forum.**

### 1) *"Legislative jurisdiction" for the cause of action is based on the Liberty Act.*

"Legislative jurisdiction," as that phrase is contemplated by this Court, exists to remedy the statutory wrongs committed by both Imperial and WPP. *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1309 (11th Cir. 2022). Plainly, Congress

has the power to regulate conduct extraterritorially, *id.*, and Congress did establish a cause of action for the Rodriguez Family.

Their Claim under the Liberty Act is the right to be compensated for the trafficking of the confiscated Property in Cuba by the Imperial joint venture's use of, and benefit and profit from the Property to further the worldwide sale of Cuban-manufactured products.

More specifically, this Claim is asserted under the Liberty Act, which: "aims to deter 'trafficking in confiscated property' with the purpose of 'protect[ing] the claims of United States nationals who had property wrongfully confiscated by" the Cuban government.'" *See Garcia-Bengochea*, 57 F.4th at 920 (citing 22 U.S.C. § 6081(6)(B)).

The Liberty Act establishes a "private right of action for 'any United States national who owns the claim to [confiscated property]' against 'any person that … traffics in [such] property.'" 22 U.S.C. § 6082(a)(1)(A); *Garcia-Bengochea*, 57 F.4th at 920–21.

> [A] person "traffics" in confiscated property if that person knowingly and intentionally **. . .**
>
> > (ii) ***engages in a commercial activity using*** or otherwise benefiting      from ***confiscated property***, <u>or</u>
> > (iii) ***causes,*** directs***, participates in, or profits from, trafficking*** (as described in clause (i) or (ii)) ***by another person***, or otherwise engages in

> trafficking (as described in clause (i) or (ii))
> through another person, without the
> authorization of any United States national who
> holds a claim to the property.

*See Del Valle*, 56 F.4th at 1270–71 (emphasis added) (citing § 6023(13)).

For their part, the CACRs prohibit the "direct or *indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . organizations administered or controlled by the Government of Cuba.*") (emphasis added). 31 C.F.R § 515.206; *see also* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but *only* if "such services are widely available to the public at no cost to the user") (emphasis added); *id.*, §515.578(b)(1).

The allegations of the Second Amended Complaint demonstrate that the Court can properly assert personal jurisdiction under a long-arm statute based on these tortious acts. *SkyHop Techs.*, 58 F.4th at 1223. What follows, then, is the specific question posed by this appeal, which is whether there are sufficient grounds

to establish personal jurisdiction in the United States forum for the Rodriguez Family to sue Imperial and WPP under the Liberty Act.

### 2) Rule 4(k)(2) provides for personal jurisdiction over WPP and Imperial based on their contacts with the United States forum.

Imperial consistently denied that it was subject to personal jurisdiction in the United States. WPP argued that having "dual headquarters" in the United States was insufficient to establish personal jurisdiction over it, as it did not, despite these active contacts, concede *minimum* business contacts. (296-11-12 n.5).

Moreover, Imperial and WPP asserted that the conduct of WPP's subsidiaries was inadequate to establish personal jurisdiction. But this argument modified the allegations presented by the Rodriguez Family, which did not rely on tortious acts committed by subsidiaries of WPP in the United States.

Rather, the allegation was that WPP, by exercising control over its subsidiaries, caused them to use US Services nominally owned or controlled by BCW, Y&R or Ogilvy, for the benefit of all WPP Group entities, including the specific entities (Spanish subsidiaries of Y&R or BCW) that carried out the trafficking through US Services in violation of the Liberty Act and the CACRs. (208-22-23-¶¶ 69-70).

Therefore, the district court correctly found that because WPP refused to identify that it could be sued in New York or anywhere else in the United States, the jurisdictional forum was the United States, as authorized by Rule 4(k)(2).[6]

Under Rule 4(k)(2), "the personal-jurisdiction analysis under the Fifth Amendment is the same as that under the Fourteenth," except that the applicable forum is the United States. (345-9) (*quoting Herederos*, 43 F.4th at 1308).[7] There is jurisdiction if (a) the defendants are not subject to the jurisdiction of any state court, and (b) the exercise of jurisdiction is consistent with the Constitution and federal statute. *Fraser v. Smith*, 594 F.3d 842, 848 (11th Cir. 2020). Consistency with the Constitution and laws examines the aggregate nationwide contacts of the defendants. *Oldfield*, 558 F.3d at 1216.

---

[6] "A district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, 'if … the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).' " *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.22 (11th Cir. 2009).

[7] The Rodriguez Family subsequently preserves the argument that personal jurisdiction measured by aggregated nationwide contacts, consistent with the Fifth Amendment's source of constitutional authority, is not limited by the law construing minimum contacts under the Fourteenth Amendment.

But the Magistrate Judge and hence the district court found personal jurisdiction wanting under element "(b)," misapprehending the scope of the allegations of the Second Amended Complaint, to errantly conclude that "personal jurisdiction over WPP *entirely hinges on the websites that advertise Habanos' products.*" (345-13) (emphasis added). That was error. The detailed allegations of the Second Amended Complaint established *specific* jurisdiction over WPP and therefore Imperial, in the United States forum.

Here, either the effects test or the traditional minimum contacts test for specific jurisdiction is readily met by the allegations of the Second Amended Complaint. The trafficking by Imperial and WPP had minimum contacts with the nationwide forum when WPP completed its marketing, promotion and advertising, implementing it through the intentional use of US Services in the nationwide forum, which also satisfies the tortious activity requirement under the effects test.

### (i) *Minimum contacts were satisfactorily alleged:*

This Court applies the "three-part due process test" in specific jurisdiction cases:

> (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2)

> whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.
> The plaintiff bears the burden of establishing the first two elements before the defendant is required to make a "compelling case" regarding the third element.

*Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1355 (11th Cir. 2013) (quotations and citations omitted).

It is telling to note that the Magistrate Judge found that the Rodriguez Family plausibly alleged that WPP had trafficked in the confiscated Property. (345-20). Indeed, by its acts, WPP (and hence Imperial for which WPP acted as agent), "cause[d], . . . participate[d] in, or profit[ed]" from, the trafficking in the Property, in league with Habanos and Tabacuba, which participated in this joint venture for global profit. (*Id.*).

Further, Imperial and WPP knew that the Rodriguez Family would be injured in the United States, including in Florida, by the trafficking. After all, the Rodriguez Family provided statutory notice that trafficking in the confiscated Property would in fact cause them harm in the nationwide forum. (208-31-¶98; 14-8).

As logically, jurisdiction over Imperial was plausibly alleged based on the trafficking in the confiscated Property completed in the United States by WPP's intentional activities—the US Services—within the nationwide forum, which were deliberately provided on behalf of Imperial's joint venture. After all, the Liberty Act expressly extends its prohibition on trafficking in confiscated property to anyone that "engages in commercial activity using or otherwise benefitting from confiscated property, or … causes, directs, participates in, or profits from trafficking … by another person … or … through another person, without authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(13).

Nevertheless, the district court failed to recognize that these allegations—required to be accepted as true—established personal jurisdiction. This was error, because this vast array of WPP operations—its U.S. based servers and the defined "US Services," including email and other networking and telecom services in the United States together with the use of U.S. Internet domains, as well as the websites that advertise Habanos products, through their activity on U.S. based social media websites—established more than

33

minimum contacts purposefully availing WPP of the benefits of the forum. (341-193-11-13; 208-8, 16, 19, 22-¶¶22, 23, 54, 61, 62, 70).

Further, it is clear that WPP's marketing of the tobacco products of the Imperial joint venture with Tabacuba (Habanos)—utilizing and benefitting from the confiscated Property ultimately to profit by selling product—could *not* have existed, without the deliberate networking of that information to the world through WPPs use of the nationwide forum.

For jurisdictional purposes, the allegations of the Second Amended Complaint are readily distinguishable from *Herederos*, in which the defendant "didn't take any action in [the United States] related to that harm." 43 F.4th at 1311 n. 3. In *Herederos*, there was not even an allegation that the defendant "engaged in any 'activity or occurrence' in the United States." *Id.* at 1311. Not so here, in which it is alleged in undisputed detail that WPP intentionally and regularly engages in significant business activity in the United States forum through its use of US Services, as defined by the pleading.

Moreover, and importantly for the jurisdiction-imposing allegations of the Rodriguez Family's pleading, *Herederos* confirms that this Court's precedent, "look[s] to the affiliation between the

forum and the underlying controversy, *focusing on any activity or occurrence that took place in the forum.*" 43 F. 4th at 1310 (quoting *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018)) (emphasis original). As discussed, WPP took multiple acts within the forum to make the joint venture a success. So that here, also unlike *Del Valle*, there was no need to establish jurisdiction via an interactive website that would sell Floridians hotel rentals in Cuba. *Del Valle*, 56 F.4th at 1277.

Here, the Rodriguez Family's trafficking *Claim* under the Liberty Act was both directly affiliated with WPP's contacts with the forum and Tabacuba's literal use of the offices located in the confiscated Property in Cuba. Moreover, injury can occur in the forum not just because of profits derived by the defendant by its availing itself of the benefits of the forum, but also by acts of the defendant in the forum that extract financial interest from plaintiffs in that forum, thereby injuring those plaintiffs' financial rights. That is precisely what was alleged here.

*Herederos* cites to Supreme Court precedent to underscore the point that there need be only a relationship or "affiliation between the forum and the underlying controversy, principally, [an] activity or an

occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Herederos*, 43 F. 4th at 1310 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-360, 141 S.Ct. 1017, 1025, 209 L.Ed.2d 225 (2021)).

Here, the United States forum is filled with networked digital activity by WPP that is related to or affiliated with the worldwide marketing of products derived from Imperial's joint venture with Habanos and Tabacuba to utilize the confiscated Property for profit, all of which directly and causally injures the Rodriguez Family.

And, as underscored in *Ford Motor Co.*, there is not a requirement of "proof that the plaintiff's claim came about because of the defendant's in-state conduct." 592 U.S. at 362. In practical terms, this means that there is no requirement that Imperial sell cigars and tobacco in the United States that were produced in Cuba using the confiscated Property. Profit in the forum is not a condition precedent to personal jurisdiction in the United States when WPP, acting as Imperial's agent, has conducted related or affiliated conduct in the United States forum, all in the effort to successfully market those tobacco products worldwide.

The Rodriguez Family's allegations unequivocally established that (1) their claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; and (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws. WPP and Imperial have sufficient minimum contacts with the United States forum as a whole to invoke the minimum contacts standard for personal jurisdiction, as WPP intentionally chose to anchor its information and marketing network through U.S. servers and "US Services." The Second Amended Complaint effectively bore the burden of the first two elements of minimum contacts jurisdiction.

### (ii) *The effects test was also satisfactorily alleged:*

Consistent with *Herederos*, this Court recently explained that, in cases involving an intentional tort, it is appropriate to apply the "effects test" for determining personal jurisdiction: "A nonresident defendant's single tortious act in the forum state can satisfy the effects test, even if the defendant lacks any other contacts with the forum state." *SkyHop Techs.* 58 F.4th at 1219 (finding personal

jurisdiction in a civil claim under the Computer Fraud and Abuse Act).

Intentional and knowing trafficking under the Liberty Act is a tort, so the "effects test" applies—a single tortious act aimed at the forum may substitute for the determination whether a defendant purposefully availed itself of the privilege of conducting business within the forum, even where that single tort is the defendant's only contact with the forum. *Del Valle*, 56 F.4th at 1275 (citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *see also SkyHop Techs.*, 58 F.4th at 1230 ("To meet the test, the tort must have been intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state.")(quotation omitted); *see also Louis Vuitton Malletier,* 736 F.3d at 1356 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir.2008)) (same); *HB Productions, Inc. v. Faizan*, 603 F. Supp. 3d 910, 921 (D. Haw. 2022) ("the purposeful availment test is applicable and is satisfied 'if the defendant has taken deliberate action within the forum state.'").

As *Faizan* reasons:

> [W]here a defendant's actions "occur" or are "committed" when he or she uses the Internet to commit a digital tort—the court recognizes *that a defendant's manipulating data in a computer by a complex process controlled from a remote location does not alter the fact that the manipulation of the data, i.e., creating conditions prohibited by tort law, occurs where the server is physically located.*

*Faizan*, 603 F. Supp. 3d at 926 (D. Haw. 2022) (emphasis added) (citing *United States v. Ivanov*, 175 F. Supp. 2d 367, 371 (D. Conn. 2001)) (setting forth similar rationale for criminal jurisdiction in a prosecution under the Computer Fraud and Abuse Act).

The Rodriguez family's Claim under the Liberty Act sounds in tort, *Del Valle*, 56 F.4th at 1274, properly pleading that WPP committed tortious acts in and aimed at the United States, including by the intentional election to use United States-based computer servers and social media platforms operated by United States based companies, creating multiple file share sites on internet domains nominally controlled by WPP's U.S. subsidiaries, using multiple email addresses that ran through U.S. based servers, purchasing internet, email, and other networking and telecom services in the United States, all of which were used in violation of the Liberty Act (and the

Cuban Asset Control regulations) to traffic the illicit goods derived from the unauthorized use of the Rodriguez Property.

Indeed, those intentional acts were deliberately aimed at the Rodriguez Family because, under the Liberty Act, direct notification was provided to Imperial and WPP that the Family's Claim to the confiscated Property existed and that they (Imperial and WPP) would be subject to statutory treble damages if they continued trafficking in the Property . (208-31-¶¶98-99).

The district court erred, however, by focusing on the *interactive* nature (or lack thereof) of WPP's social media portals and websites. Those facts are not legally controlling, when: (a) an actual purchase from a website is not required to complete the tort of trafficking and (b) the Second Amended Complaint alleged multiple instances of tortious activity whereby WPP (and hence its principal Imperial) purposefully established minimum contacts with the United States.

There is—and should be—a legal distinction drawn between, on the one hand, the intentional trafficking in confiscated property through the use of U.S.-based servers, internet domains, websites and US Services (in violation of the Liberty Act and the CACRs)—as

the Rodriguez Family alleged, and, on the other hand, a mere fortuity of contacts with a forum (here, the entire United States).

The Second Amended Complaint details WPP's intricate commercial structure that was used in marketing and promoting products from the Imperial joint venture that uses, benefits, and profits from trafficking of the confiscated Property. WPP and Imperial purposefully availed themselves of the privilege of conducting business in the United States.

It is that "intentional and knowing improper use of a computer server in the forum state" that the district court understood to establish personal jurisdiction in *Faizan.* 603 F. Supp. 3d at 926. *Faizan* points out that the tort literally occurs at the location of the computer because it places the party's miscreant (tortious) behavior in that forum. *Id.* In the instant case, WPP's use of its US Services, including its own U.S. based servers—*in the United States*—to promote and advance the trafficking in Property confiscated by the Cuban government, violated the Liberty Act and the Cuban Asset Control regulations.

Analogous to *SkyHop Techs.,* the Second Amended Complaint's allegations define multiple intentional tortious acts within the

41

identifiable jurisdictional forum. Those acts constitute the "effects" on the forum that suffice to establish personal jurisdiction over WPP and therefore Imperial, which benefitted from the trafficking through the commercial network deployed by WPP, and therefore, also trafficked in violation of the Liberty Act. *Skyhop Techs.*, 58 F.4th at 1229-31. This was literally "purposeful availment" by choice, as opposed to "random, isolated, or fortuitous" behavior. *Id.* at 1230 (quotation omitted).

The "essential foundation of specific jurisdiction [is] whether there is a strong relationship among the defendant, the forum, and the litigation. *SkyHop Techs*, 58 F. 4th at 1229 (citations omitted). This Court found "that essential foundation" was present where the defendant withheld SkyHop's passwords and "knowingly and intentionally directed its emails demanding compensation and withholding SkyHop's passwords into Florida, and a Florida resident received them. "Because those emails contained the alleged 'threat[s]' to do 'damage' to SkyHop's Software and therefore triggered SkyHop's CFAA claim, this litigation has the required connection to Indyzen's Florida-based contacts." *Id.*

Of course, WPP and Imperial had no need to send emails to the Rodriguez Family in Florida. Unlike the Computer Fraud and Abuse Act claim in *SkyHop*, the Liberty Act does not require that a defendant communicate with the owner of confiscated property.

The Liberty Act trafficking was complete when WPP's US Services transmitted advertising and promotional materials to their destination, by routing all such communications through the United States. This is so because, under Rule 4(k)(2), the relevant jurisdiction is the entire United States, not just Florida or any given state.

Indeed, WPP intentionally chose to send all relevant computer signals, operations, and communications of its worldwide entities through its computer servers and networks and US Services in the United States. And it chose to distribute those services throughout the WPP Group. As in *SkyHop*, WPP deliberately "directed its conduct into" the United States, (*id.* at 1229), and that very same conduct serves as the basis for the Liberty Act claim.

### 3) It is "fair play" to subject both WPP and Imperial to the personal jurisdiction of the United States courts.

Does this jurisdictional foundation comport with fair play for purposes of fundamental due process? As in *Skyhop Techs.*, the

answer should be a resounding yes. WPP and Imperial cannot compellingly ignore the intentional conduct at the heart of their commercial (here, also trafficking) activity. *See Skyhop Techs.*, 58 F.4th at 1231.

There should be and is no valid objection, constitutional or otherwise, to holding WPP responsible for its own decision to cause its amorphous group of interconnected companies to virtually enter the United States. That is especially so where WPP deployed US Services and its own servers in the United States to further trafficking in the Confiscated Property violated both the Liberty Act and CACRs. The conduct here is doubly inexcusable because both Imperial and WPP continued their actions for many months after the Rodriguez Family directly informed them that they were trafficking in the Rodriguez's property in violation of the Liberty Act. (208-31-¶¶98-99).

Although the district court did not address the jurisdictional element of "fair play," the record is clear that both Imperial and WPP were aware of the risks of being in the business of selling and advertising Cuban tobacco. WPP, in its SEC filing, specifically noted that its activities "would render it "subject to the laws of the US . . . that impose sanctions and regulate the supply of services to certain

countries," including, of course, the Liberty Act. (208-19-20-¶ 62 & n. 35).

Similarly, Imperial, since at least 2007, was well aware of the law and the risk of trafficking in Cuban tobacco. (208-18-¶60). Imperial's October 12, 2007 "Response" to an SEC inquiry acknowledged that by acquiring "Altadis' 50% ownership interest in [Habanos] a company which distributes cigars manufactured in Cuba," Imperial "may be restricted . . . by the nationality of the personnel that we involve in these activities. In particular, Altadis' cigar operations in Cuba could be materially limited by the operation of the" Liberty Act). (208-4-3 (Ex. 4A)).

WPP and Imperial, through WPP's acts, regularly conducted business activities in the nationwide forum—(i) it is not burdensome for these global businesses to answer in the forum; (ii) the forum is deeply interested in adjudicating this dispute as called for in the Liberty Act; and (iii) the Rodriguez Family is entitled by statute to convenient and effective relief in the nationwide forum for the alleged harm caused by the unauthorized use of their confiscated Property. *Louis Vuitton Malletier*, 736 F.3d at 1358 (citing *Lovelady*, 544 F.3d at 1288); *see also, Skyhop Techs.*, 58 F.4th at 1231.

All required constitutional norms of fair play, reasonableness and fundamental due process were met and exceeded by the factual allegations of the Second Amended Complaint. The Court should reject the district court's errant conclusion that personal jurisdiction is lacking over Imperial and WPP.

### C. The Rodriguez Family preserves for review the question of whether this Court's precedent correctly holds that the exercise of personal jurisdiction under the Fifth Amendment is properly constrained by the same standards imposed on personal jurisdiction sourced under the Fourteenth Amendment.

Should the Court disagree that the Second Amended Complaint establishes personal jurisdiction over Imperial and WPP under the Fifth Amendment and Rule 4(k)(2), we preserve the question of whether the federal courts may, consistent with the Fifth Amendment, impose the same limitations on Congress' ability to establish extraterritorial jurisdiction that courts have imposed on states through the Fourteenth Amendment. *Cf. Herederos*, 43 F.4 th at 1310 (declining to adopt "arbitrary or fundamentally unfair" standard for exercise of personal jurisdiction under Fifth Amendment).

46

That issue is now raised by pending requests for review before the Supreme Court in *Fuld v. Palestine Liberation Org.*, 82 F.4th 74 (2d Cir. 2023) and *Waldman v. Palestine Liberation Org.*, 82 F.4th 64 (2d Cir. 2023), and from a decision of the Ninth Circuit, *Devas Multimedia Private Ltd. v. Antrix Corp.*, 2023 WL 4884882 (9th Cir. Aug. 1, 2023), *rehearing en banc denied*, 91 F. 4th 1340 (9th Cir. 2024). *See* Docketed certiorari petitions at 24-20, 24-17.

Several dissents in recent cases have maintained that the Fifth Amendment does not impose limits on extraterritorial personal jurisdiction of the federal courts, and that only Congress may impose such limits by statute. *See Fuld v. Palestine Liberation Organization*, 101 F.4th 190, 217 (2d Cir. 2024) (Menashi, J., dissenting from denial of rehearing en banc) (Mem); Douglass v. Nippon Yusen Kabushiki Kaisha, 46 F.4th 226, 255 (5th Cir. 2022) (*en banc*) (Elrod, J., dissenting) ("The text, history, and structural implications of the Fifth Amendment Due Process Clause suggest that its original public meaning imposed few (if any) barriers to federal court personal jurisdiction."); *id.* at 282 (Higginson, J., dissenting) ("[B]y importing Fourteenth Amendment constraints on personal jurisdiction, born out of federalism concerns, into process due to foreign corporations

in global disputes, where those concerns don't exist, our court makes several mistakes."); *id.* at 284 (Oldham, J., dissenting) ("[A]s originally understood, the Fifth Amendment did not impose any limits on the personal jurisdiction of the federal courts. Instead, it was up to Congress to impose such limits by statute."); *see also Devas Multimedia Private Ltd. v. Antrix Corp. Ltd.*, 91 F.4th at 1352 (Bumatay, J., dissenting from the denial of rehearing *en banc*) ("Justice Story opined that foreign-based defendants were owed no more than service authorized by Congress before being haled into our federal courts.").

The Liberty Act does not constrain federal court jurisdiction for extraterritorial acts confiscating Property of persons with claims under that statute. The Court should reconsider its decisions holding that the Fifth Amendment's jurisdictional reach under Rule 4(k)(2) is restrained by the minimum contacts or effects standards applied to state laws under the Fourteenth Amendment.

## II. THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE RODRIGUEZ FAMILY FAILED TO STATE A CLAIM UNDER THE LIBERTY ACT.

In adopting the Magistrate Judge's report as to personal jurisdiction, the district court properly declined to address the merits

issues as to whether the statute of limitations had expired, or the Second Amended Complaint otherwise failed to state a cause of action. This Court should decline to reach these issues and instead defer to the district court to first address them: "[W]e generally will not consider issues which the district court did not decide." *SkyHop Techs.*, 58 F.4th at 1231-32 (quoting *MSP Recovery Claims, Series LLC v. Metro Gen. Ins. Co.*, 40 F.4th 1295, 1232 (11th Cir. 2022)).

In any event, the Magistrate Judge erred in these two additional suit-ending recommendations.

## A. Dismissal is improperly founded on a statute of repose.

The Magistrate Judge erred in concluding that Plaintiffs failed to state a claim as: "Plaintiffs do not allege that Habanos' trafficking occurred past 2013 or how WPP and Imperial are implicated by Non-party Tabacuba's alleged use of the Property in 2020" and thus as a consequence, "it is apparent from the face of the Second Amended Complaint that Plaintiffs' claim against Defendants is time-barred." (345-18).

It is undisputed that the Liberty Act prohibits bringing actions more than two years after the trafficking giving rise to the action has

49

ceased to occur, a limitation that the Magistrate referred to as a statute of repose, 22 U.S.C.A. §6084 (345-16). Significantly, the Magistrate Judge correctly found that:

> Plaintiffs allege, in relevant part, that WPP, "by assisting Imperial, Habanos, and Tabacuba in marketing and publicizing the Habanos[] products manufactured, stored at or shipped from the [] Property, including through extensive use of US Services, [] causes, directs, participates in, or profits from, or otherwise engages in, trafficking in the [] Property by Imperial, Habanos, and Cuba". *See* Sec. Am. Compl. [D.E. 208¶ 96]. Based on these allegations, the undersigned finds that the Second Amended Complaint plausibly alleges trafficking by WPP.

(345-20).

*This very conduct continued through at least October 29, 2020,* when Imperial sold its interests in Habanos and other Cuban Joint Venture tobacco companies. (208-27-28-¶¶86-87). The Report itself establishes, therefore, that the Second Amended Complaint alleges claims that are not barred by a statute of limitations or repose.

The Magistrate Judge also cited to *Havana Docks Corp. v. Carnival Corp.,* 19-CV-21724, 2020 WL 5517590, at *12 (S.D. Fla. Sept. 14, 2020) for the proposition that dismissal on the grounds of a time bar is only appropriate "if it is apparent from the face of the complaint that the claim is time barred." However, the *Havana Docks* court made

50

unequivocally clear that a statute of repose, like a statute of limitations, is an affirmative defense and plaintiffs are not required to negate an affirmative defense in their complaint. *Havana Docks Corp.*, at *12; *see also Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) ("statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in the complaint) (quotation omitted). Nowhere in the complaint does it state that the trafficking ceased prior to August 7, 2018.

The Magistrate Judge appeared as well to confuse the purpose of the photographs in Composite Exhibits 6 and 7 to the Second Amended Complaint. (345-17,18). These photographs were offered as demonstrative aids to provide one example of trafficking in the Property. There were multiple other examples of continuous trafficking in the Property at least through 2020. And there was no allegation anywhere in the Complaint that trafficking ceased on the date that the photographs were taken. The allegations clearly alleged trafficking though the relevant time period.

**B.    The Second Amended Complaint properly alleges trafficking in the relevant time period.**

The lawsuit was commenced on August 6, 2020, and provided that trafficking did not cease prior to August 7, 2018; hence the claims are not time barred given that suit may be filed within two years of the cessation of trafficking.

The Second Amended Complaint clearly alleges that Tabacuba, the Cuban state tobacco monopoly company that manages the growth, purchase and resale of all raw tobacco grown in Cuba, and the same entity that was Imperial's joint venture partner, continued to use the Property through at least October 29, 2020. (208-5-¶¶11-12; 17-18).[8]

---

[8] *E.g.*: "The unauthorized and continuous use of the RRHSC Property by Imperial and Habanos also extended to Tabacuba's management of the day-to-day business of all or some Cuban tobacco products from offices it maintained in the RRHSC Property, including purchasing of raw tobacco from Cuban farmers and subsequent [sic] reselling the same to other entities in Cuba for further manufacture or use." (208-5-¶11).

"Some or all of the Cuban tobacco in the Cuban cigar products manufactured by Habanos and advertised or promoted by WPP, Y&R and BCW were purchased, managed and resold by Tabacuba from Tabacuba's offices at the [] Property." (208-5-¶12).

This fact was also confirmed by the Declaration of Jorge Fernández Núñez (89-6), in which he confirmed that "[t]he Empresa's offices are located on two floors in the Calle 23 and 16 Building" (the Property) and that the Empresa "purchases raw tobacco from Cuban farmers and entities located in Cuba and sells this raw tobacco to other Cuban entities in Cuba." (89-6-¶¶ 4, 5). Those entities—all controlled by Tabacuba (and Cuba)—market and resell Cuban tobacco worldwide through Habanos.

Nonetheless, the Magistrate Judge errantly found that the Second Amended Complaint "is devoid of allegations affirmatively connecting WPP or Imperial to Tabacuba's use of the Property during the relevant actionable period." (345-18). Not so, as the pleading affirmatively states that "[s]ome or all of the Cuban tobacco in the

---

"At all times from January 2008 until at least October 29, 2020, Imperial, both through Habanos and the other Cuban Joint Ventures, as well as through the Cuban tobacco monopoly company, Tabacuba, Imperial's joint-venture partner in Habanos, had the use of, and continued to use, the [] Property without compensation to, or authorization from, the Rodriguez Family." (208-6-¶17).

"The unauthorized use of the [] Property by Imperial and Habanos also extended to Tabacuba's management of the day-to-day business of all or some Cuban tobacco products from offices it maintained in the [] Property at all times from 2007 until at least October 29, 2020." (208-6,7-¶18).

53

Cuban cigar products manufactured by Habanos and advertised or promoted by WPP, Y&R and BCW were purchased, managed and resold by Tabacuba *from Tabacuba's offices at the* [] *Property,"* (208-5-¶12) (emphasis added), and that Imperial benefits from the marketing and sale of such tobacco products. (208-7-¶19).

The Second Amended Complaint also provides that Imperial was a partial owner of Habanos, one of the entities that sold the Cuban tobacco products, and that WPP promoted and marketed Habanos and its products after being retained (for payment) by Imperial or Habanos through their agents. (208-3-4,7-¶¶6, 20).

The Magistrate Judge further erred by finding that "the connection between Tabacuba's alleged use of the Property and Defendants is far too attenuated." (345-18). The Liberty Act does not provide an attenuation exception. To the contrary, the law is designed to expand the sphere of trafficking beyond the entity in immediate possession of the confiscated property, as it discusses trafficking in terms of "using or *otherwise benefitting from,"* or to cause, direct, participate in *or profit from trafficking,* even if by or through another person. 22 U.S.C. § 6023 (13)(A); *see also Del Valle,* 56 F.4th at 1273 (noting that

the defendants there: "'also derive[d] an indirect benefit' by 'receiving advertising revenues driven by or related to' the web traffic.").

So-called "attenuation" is not a bar to trafficking. Indeed, the statute deliberately expands the definition of trafficking to "profiting from another person's trafficking," thereby prohibiting remote parties from profiting from (or directing) the primary trafficker's trafficking. There is no remoteness caveat in Congress's words, and it would violate the canon of statutory construction to add such words or limitations to the statute. *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009).

Imperial and WPP engaged in commercial activity and benefitted from the confiscated property, by advertising the tobacco that was managed through offices in the confiscated Property. They directed, participated in, or profited from Tabacuba and Habanos' trafficking, and WPP profited by being compensated for its marketing efforts in promoting the trafficked products. There were multiple allegations that the trafficking did not stop prior to 2018. (208-8, 19-26-¶¶ 21, 61, 83). For example:

> Imperial decided, beginning no later than 2010 and continuing at least through October 2020, to retain, either directly or through Habanos, WPP, the WPP Group and its

> U.S.-based corporate agents, Ogilvy and later Y&R and BCW, to engage in the marketing of, i.e., trafficking in, Cuban cigars managed from, or manufactured at, stored in, or distributed from, the confiscated RRHSC Property.
>
> [N]o later than 2017, Imperial also decided, either directly or through Habanos, WPP, the WPP Group and U.S. Corporate Agents, to contract for the use of social media "portals" operated by still additional U.S. corporations.[9]

(208-19-¶61).

The Magistrate Judge also erred to the extent allegations were deemed to be conclusory. Pleading standards are lowered where specific information about the claim is peculiarly within the defendant's knowledge or control. *Hill v. Morehouse Med. Associates, Inc.*, 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003). The specifics, including the total profits from the trafficking, are within Imperial and WPP's exclusive knowledge. The pleading was not unclear or otherwise subject to dismissal on this ground.

---

[9] The Declaration of Susan Bailey, dated April 27, 2021, confirmed the continued existence of the social media platforms on Twitter, YouTube and Instagram. (89-1-¶¶2-4).

## III. THE MAGISTRATE ERRED IN FINDING THAT THE RODRIGUEZ FAMILY FAILED TO PLEAD THAT THE DEFENDANTS ACTED "KNOWINGLY AND INTELLIGENTLY."

The Magistrate Judge erroneously concluded that the Second Amended Complaint failed to allege that Imperial and WPP acted "knowingly and intentionally" with respect to the Property. (345-21-22). The Magistrate also erred in finding that "a plain reading of the HBA clearly requires that the alleged wrongdoer also knowingly and intentionally act without the authorization of any United States national who holds a claim to the property." *Id.*

First, multiple allegations of the Second Amended Complaint plead knowing and intentional conduct, (208 at ¶¶ 77, 81, 84, 85, 88, 90, 91, 92), and 30-day notice of the violation and intent to commence this anti-trafficking action. (208-31-¶98; 14-8). These allegations must be accepted as true. *SkyHop Techs.*, 58 F.4th at 1222. Moreover, the trafficking continued after notice of the claim, which establishes knowing and intentional scienter. *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1157 (S.D. Fla. 2022), *motion to certify appeal denied*, 19-CV-21724, 2022 WL 1522007 (S.D. Fla. May 13, 2022).

57

Second, the motions to dismiss did not and could not suggest that the Second Amended Complaint alleged that WPP and Imperial were acting with the authorization of a US national holding a claim to the Property. Thus, the defense fails here.

Third, the statutory phrase "knowingly and intentionally," found in section 6023(13(A)'s definition of "traffics," modifies the three ways in which there is trafficking—by selling or transferring confiscated property, or engaging in commercial activity benefitting from confiscated property, or participating or profiting in trafficking committed by another person.

But the phrase "knowingly and intentionally," which consists of two adverbs, can only be read to modify acts, *e.g.*, the verbs "selling," "transferring," "engaging," "benefiting," "participating," and "profiting." The phrase does not modify the last subclause of the provision—"without the authorization of any United States national who holds a claim to the property,"—as there is no act by a defendant in that phrase. Thus, the plain reading of the statute is contrary to the interpretation given it by the Magistrate Judge.

Indeed, were common canons of construction applied, the phrase "knowingly and intentionally" would, based on the "rule of the last antecedent," only modify the series of three ways to traffic in

58

confiscated property, not the final subclause of the section. *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir 2022). Likewise, the Magistrate Judge's misinterpretation would also fail the "series-qualifier canon," which would impose the scienter requirement only upon the list of three ways in which to traffic. *Id.* The Magistrate Judge erred in recommending that the action be dismissed for failure to plead scienter.

## CONCLUSION

The Court should reverse the district court's final judgment dismissing the case for lack of personal jurisdiction and instruct the district court to reinstate this action.

Respectfully submitted,

*/s/ Charles M. Auslander*

Rodriguez Tramont & Núñez P.A.
Francisco Ramon Rodriguez
Florida Bar No. 348988
Paulino Antonio Núñez, Jr.
Florida Bar No. 814806
255 Alhambra Circle
Suite 1150
Coral Gables, FL 33134
T: (305) 350-2300
frr@rtgn-law.com
pan@rtgn-law.com

Charles M. Auslander
John G. Crabtree
Brian C. Tackenberg
Crabtree & Auslander
240 Crandon Boulevard, Suite 101
Key Biscayne, Florida 33149
Tel: (305) 361-3770
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
btackenberg@crabtreelaw.com

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 28(c)(2) and (e)(2)(B)(i) as the brief contains 11,062 words, excluding those parts exempted by 11th Circuit Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Bookman Old Style.

Respectfully submitted,

*/s/ Charles M. Auslander*
Charles M. Auslander
Florida Bar No. 349747
Crabtree & Auslander
240 Crandon Boulevard,
Suite 101
Key Biscayne, Florida 33149
Tel (305) 361-3770
causlander@crabtreelaw.com

*Co-Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record.

Respectfully submitted,

*/s/ Charles M. Auslander*
Charles M. Auslander