No. 24-11487

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

LUIS MANUEL RODRIGUEZ, MARIA RODRIGUEZ, A.K.A. MARIA TERESA LANDA, ALFREDO RAMON FORNS, RAMON ALBERTO RODRIGUEZ, RAUL LORENZO RODRIGUEZ, *et al.*,

*Plaintiffs-Appellants*,

*v.*

IMPERIAL BRANDS, PLC., CORPORACIÓN HABANOS, S.A., WPP, PLC., YOUNG & RUBICAM, LLC., BCW, LLC., A.K.A. BURSON COHN & WOLFE LLC.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of Florida, No. 1:20-cv-23287-DPG Before the Honorable Darren P. Gayles

## BRIEF FOR DEFENDANT-APPELLEE IMPERIAL BRANDS PLC

ANDREW RHYS DAVIES
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
andrew.davies@wilmerhale.com

October 16, 2024

## AMENDED CERTIFICATE OF INTERESTED PERSONS

Pursuant to 11th Cir. Rules 26.1-1, 26.1-2, 26.1-3, and 28-1(b), Imperial Brands plc identifies the following interested persons. The persons whose names are underlined have been added to the Certificate of Interested Persons filed June 4, 2024, ECF No. 17.

- Akerman, LLP – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Allen Overy Shearman Sterling US LLP – counsel for Defendant-Appellee Imperial Brands plc

- Auslander, Charles M. – counsel for Plaintiffs-Appellants

- BCW, LLC – Defendant-Appellee

- Berenthal & Associates, P.C. – counsel for Plaintiffs-Appellants

- Berenthal, David W. – counsel for Plaintiffs-Appellants

- Berenthal, James Leon – counsel for Plaintiffs-Appellants

- Carver, Christopher Stephen – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Casamassima, Chris – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Cavallo, Christopher Cole – counsel for Defendant-Appellee Imperial Brands plc

- Conroy, Christina – Plaintiff-Appellant

- Corporación Habanos, S.A. – Defendant

- Crabtree & Auslander – counsel for Plaintiffs-Appellants

- Davies, Andrew Rhys – counsel for Defendant-Appellee Imperial Brands plc

- Davies, Christopher – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Etra, Jonathan – counsel for Defendant-Appellee Imperial Brands plc

- <u>Fleming, Mark C.</u> – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Forns, Alfredo Ramon – Plaintiff-Appellant

- Frank, Lindsay – counsel for Defendant Corporación Habanos, S.A.

- Freyre, Pedro A. – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Gayles, Hon. Darren P. – United States District Judge for the Southern District of Florida

- Harris, Charles M. – counsel for Defendant Corporación Habanos, S.A.

- Imperial Brands plc (LSE:IMB) – Defendant-Appellee

- Krinsky, Michael – counsel for Defendant Corporación Habanos, S.A.

- <u>Leen, Ashley McLaughlin</u> – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Lieb, Stephanie Crane – counsel for Defendant Corporación Habanos, S.A.

- Mora, Alexandra Milagros – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Nelson Mullins Riley Scarborough, LLP – counsel for Defendant-Appellee Imperial Brands plc

- Nuñez, Paul Michael – counsel for Plaintiffs-Appellants

- Nuñez Jr., Paulino A. – counsel for Plaintiffs-Appellants

- Ormand, Justin L. – counsel for Defendant-Appellee Imperial Brands plc

- Otazo-Reyes, Alicia M. – United States Magistrate Judge for the Southern District of Florida (ret.)

- Pensyl, Bradley S. – counsel for Defendant-Appellee Imperial Brands plc

- Rabinowitz Boudin Standard Krinsky & Lieberman, P.C. – counsel for Defendant Corporación Habanos, S.A.

- Raymond, Mark Francis – counsel for Defendant-Appellee Imperial Brands plc

- Reisinger, Nathaniel – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Rodriguez, Frank R. – counsel for Plaintiffs-Appellants and a Plaintiff-Appellant

- Rodriguez, Luis Manuel – Plaintiff-Appellant

- Rodriguez, Maria – Plaintiff-Appellant

- Rodriguez, Ramon Alberto – Plaintiff-Appellant

- Rodriguez, Raul – Plaintiff-Appellant

- Rodriguez Tramont Guerra & Nuñez, P.A. – counsel for Plaintiffs-Appellants

- Schultz, Allison M. – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- Surgeon, Naim – counsel for Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- The Capital Group Companies, Inc. – The Capital Group Companies, Inc. has notified Imperial Brands plc that it holds more than ten percent of the shares of Imperial Brands plc, and that such shares are owned by accounts under the discretionary management of The Capital Group Companies, Inc., or its investment-management affiliates, primarily for institutional and high-net-worth individuals.

- Todd, Ryan Kenneth – counsel for Defendant-Appellee Imperial Brands plc

- Trenam Law – counsel for Defendant Corporación Habanos, S.A.

- Wilmer Cutler Pickering Hale & Dorr LLP – counsel for Defendant-Appellee Imperial Brands plc and Defendants-Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC

- WPP plc (NYSE:WPP) – Defendant-Appellee

- Young & Rubicam, LLC – Defendant-Appellee

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Imperial Brands plc (LSE: IMB) states that it has no parent corporation and that no other publicly held corporation has notified Imperial that it owns ten percent or more of Imperial's stock.

October 16, 2024

/s/ *Andrew Rhys Davies*
ANDREW RHYS DAVIES
*Counsel for Defendant-Appellee*
*Imperial Brands plc*

## STATEMENT REGARDING ORAL ARGUMENT

Imperial Brands plc requests oral argument. Oral argument will materially assist the Court in resolving the important issues presented, including the limits that due process imposes on personal and legislative jurisdiction in the transnational context of this case and significant issues this Court has not previously addressed regarding the interpretation of Title III of the Helms-Burton Act.

# TABLE OF CONTENTS

Page

AMENDED CERTIFICATE OF INTERESTED PERSONS ................. C1

CORPORATE DISCLOSURE STATEMENT........................................... C5

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF AUTHORITIES ................................................................ v

INTRODUCTION ............................................................................ 1

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ...................................................................... 4

STATEMENT OF THE ISSUES.......................................................... 5

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER
PARTIES................................................................................ 6

STATEMENT OF THE CASE ............................................................ 7

    A.    Procedural Background ........................................... 7

    B.    Statement of Facts ................................................ 11

    C.    The Decision Under Review.................................... 15

    D.    Standard of Review ............................................... 17

SUMMARY OF ARGUMENT ............................................................ 19

ARGUMENT ................................................................................ 24

I.    THE SECOND AMENDED COMPLAINT ("SAC") ESTABLISHES NO
BASIS FOR PERSONAL JURISDICTION OVER IMPERIAL, A U.K.
CORPORATION THAT IS NOT ALLEGED TO HAVE COMMITTED ANY
CONDUCT IN OR DIRECTED AT THE UNITED STATES ...................... 24

    A.    Imperial Cannot Be Subjected To Personal Jurisdiction
Based On Allegations That Others Used Confiscated
Property In Cuba Or Promoted Cuban Cigars Online ......... 25

    B.    Even If Imputed To Imperial, Others' Alleged
Jurisdictional Contacts Do Not Create The Required
Nexus Between This Case And This Forum ........................ 29

1. Allegations about others' use of globally accessible websites and of real property in Cuba do not show purposeful availment ...................................................... 30

2. This claim does not arise out of or relate to the alleged jurisdictional contacts ...................................... 32

C. It Would Be Unconstitutionally Unreasonable To Exercise Jurisdiction Over Imperial Given The United Kingdom's Assertion Of Countervailing Policy Interests .... 34

II. THE JUDGMENT OF DISMISSAL MAY BE AFFIRMED ON SEVERAL ALTERNATIVE GROUNDS ............................................................. 37

A. Congress Lacks Extraterritorial Legislative Jurisdiction To Regulate Imperial's Alleged Conduct ............................. 37

B. The SAC Fails To Plead A Plausible Title III Claim ............ 41

1. As the SAC alleges only trafficking outside the two-year repose period, the claim is time-barred ........ 42

2. The SAC does not plead that Imperial or WPP acted knowingly and intentionally .............................. 46

a) The SAC does not allege that Imperial or WPP knew that the RRHSC Property was confiscated ............................................................ 47

b) The SAC also fails to allege that Imperial or WPP knew that they were acting without required authorization from a United States national .............................................................. 49

3. The SAC does not plead the trafficking element of a Title III claim because Habanos's and Tabacuba's alleged use of the RRHSC Property is not "trafficking" ............................................................ 51

4. The SAC does not plead that the Cuban Government confiscated the RRHSC Property from a United States national ...................................... 53

C. Plaintiffs Lack Article III Standing Because This Lawsuit Does Not Seek To Remedy Any Concrete Injury Caused By Imperial ............................................................ 56

CONCLUSION ...................................................................... 58

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981) ...................... 38, 41

*American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 221 F.3d 1211 (11th Cir. 2000).......... 37, 38

*American Insurance Ass'n v. Garamendi*, 539 U.S. 396 (2003)............. 41

*Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987) .................................. 34, 35, 36

*Baker Botts, LLP v. ASARCO LLC*, 576 U.S. 121 (2015) ...................... 52

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................ 48

*Browne v. CTC Corp.,* 15 F.4th 175 (2d Cir. 2021) ................................ 42

*Bryant v. United States*, 768 F.3d 1378 (11th Cir. 2014)....................... 42

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).......................... 29

*California Public Employees' Retirement System v. ANZ Securities, Inc.* 582 U.S. 497 (2017).............................................. 42

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003)...................................... 31

*Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000)................................................................. 30

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014)........................................ 42

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...................................... 35

*De Fernandez v. Crowley Holdings, Inc.*, No. 21-cv-20443, 2023 WL 2646346 (S.D. Fla. Mar. 27, 2023) .......................... 55, 56

*Devas Multimedia Private Ltd. v. Antrix Corp.*, 91 F.4th 1340 (9th Cir. 2024)................................................................. 30

*Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284 (11th Cir. 2021)..................................................................27

*Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021) ... 53, 54, 55

*First Chicago International v. United Exchange Co.*, 836 F.2d 1375 (D.C. Cir. 1988)......................................................26

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) ............................................... 32, 34

*Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010) ..............................28, 29

*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916 (11th Cir. 2023)..........................................................................52, 56, 57

*Gerling Global Reinsurance Corp. of America v. Gallagher*, 267 F.3d 1228 (11th Cir. 2001) ...............................................39, 41

*Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251 (11th Cir. 2006).............................................................................. 7, 39, 57

*GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260 (5th Cir. 2018).............................................................................................31

*Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088 (S.D. Fla. 2022) .........................................................................48

*Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020)................................43

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211 (4th Cir. 2019) ................................................................................24

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*, 43 F.4th 1303 (11th Cir. 2022)....................... 17, 24, 27, 30, 37

*Heyman v. Cooper*, 31 F.4th 1315 (11th Cir. 2022)...............................50

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)..................34

*Jackson v. City of Atlanta, Georgia*, 97 F.4th 1343 (11th Cir. 2024) .......................................................................... 45

*Jones v. United States*, No. 22-13381, 2024 WL 837054 (11th Cir. Feb. 28, 2024) ................................................. 43

*Julmist v. Prime Insurance Co.*, 92 F.4th 1008 (11th Cir. 2024) .......................................................................... 43

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) ........................................................... 30

*Mann v. Palmer*, 713 F.3d 1306 (11th Cir. 2013) ................................... 44

*Moore v. Cecil*, 109 F.4th 1352 (11th Cir. 2024) ......................... 12, 18, 48

*Odebrecht Construction, Inc. v. Prasad*, 876 F. Supp. 2d 1305 (S.D. Fla. 2012) ............................................................................ 9

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009) ................................................................................. 35

*Regueiro v. American Airlines, Inc.*, No. 19-cv-23965, 2022 WL 2399748 (S.D. Fla. May 20, 2022) .................................. 55

*Ruan v. United States*, 597 U.S. 450 (2022) .................................... 49, 50

*Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006) .............. 12, 24, 26

*Stone v. Commissioner of Internal Revenue*, 86 F.4th 1320 (11th Cir. 2023) ...................................................................... 18

*Tilton v. Playboy Entertainment Group, Inc.*, 554 F.3d 1371 (11th Cir. 2009) ...................................................................... 47

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................... 57

*United Health Services, Inc. v. United States*, 579 U.S. 176 (2016) ..................................................................................... 50

*United States ex rel. Bibby v. Mortgage Investors Corp.*, 987 F.3d 1340 (11th Cir. 2021) ......................................................... 28

*United States v. Baston*, 818 F.3d 651 (11th Cir. 2016)....................37, 38

*United States v. Belmont,* 301 U.S. 324 (1937) ................................53, 54

*United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021) ................55, 56

*United States v. Campbell,* 26 F.4th 860 (11th Cir. 2022)....................56

*United States v. Ibarguen-Mosquera*, 634 F.3d 1370 (11th
    Cir. 2011) ....................................................................39, 40

*United States v. Noel*, 893 F.3d 1294 (11th Cir. 2018) ....................37, 38

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994)...........47, 50

*Wainberg v. Mellichamp*, 93 F.4th 1221 (11th Cir. 2024) ....................43

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir.
    2018)....................................................................................31, 33

*Walden v. Fiore*, 571 U.S. 277 (2014)...........................................25, 31, 34

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286
    (1980) ....................................................................................28, 29

## STATUTES, RULES, AND REGULATIONS

22 U.S.C.
    § 6023 ...................................... 17, 22, 46, 49, 50, 51, 52
    § 6081 .........................................................39, 54, 57
    § 6082 ......................................... 4, 7, 8, 17, 54, 56, 57
    § 6084 .........................................................8, 21, 42

28 U.S.C.
    § 1291 .................................................................4
    § 1331 .................................................................4

31 C.F.R. § 515.578.............................................................32

Fed. R. Civ. P. 4 ..................................................14, 15, 16, 30

11th Cir. R. 28-5 .................................................................7

## OTHER AUTHORITIES

141 Cong. Rec. S15,106 (daily ed. Oct. 12, 1995) ................................... 37

142 Cong. Rec. H1724 (daily ed. Mar. 6, 1996) ...................................... 47

## INTRODUCTION

This is an appeal from the dismissal of a lawsuit brought under Title III of the Helms-Burton Act based on alleged "trafficking" in real property in Cuba (the "RRHSC Property") that the Cuban Government confiscated from its Cuban owner in 1961. In 2007, Defendant-Appellee Imperial Brands plc acquired an indirect noncontrolling ownership interest in Corporación Habanos, S.A., a Cuban corporation. Habanos allegedly was using a factory at the RRHSC Property for purposes of its Cuban-cigar business.

For three independent reasons, this Court should affirm the district court's ruling that the Second Amended Complaint ("SAC") failed to plead a prima facie case of personal jurisdiction over Imperial, a corporation that is incorporated and headquartered in the United Kingdom. *First*, all the alleged jurisdictional contacts were created by Habanos, which allegedly used the factory in Cuba, and by WPP subsidiaries, which allegedly helped Habanos promote its products online, yet the SAC alleges no basis to impute any of those alleged contacts to Imperial. *Second*, even if imputed to Imperial, the alleged jurisdictional contacts do not establish the required nexus between the

claim and this forum. *Third*, it would be unconstitutionally unreasonable to exercise jurisdiction in the transnational context of this case. Like other U.S. allies that object to the extraterritorial application of Title III to their citizens as a violation of international law and barrier to global trade, the United Kingdom has enacted legislation that limits Imperial's ability to defend itself from this claim.

This Court may also affirm on several independently dispositive grounds. *First*, Congress lacks extraterritorial legislative jurisdiction to regulate Imperial's alleged conduct, which has no significant connection to the United States. *Second*, the SAC fails to plead a plausible claim. Based on the allegations in the SAC, the claim is time-barred because all the alleged "trafficking" predated the two-year repose period. And the SAC fails to plead three essential elements of the claim: (a) that Imperial *knowingly and intentionally* trafficked in confiscated property to which a United States national held a claim; (b) that the alleged conduct constitutes trafficking as defined by Title III; or (c) that the Cuban Government confiscated the RRHSC Property from a United States national, as opposed to one of its own nationals. *Third*, Plaintiffs lack

Article III standing because this lawsuit does not seek to remedy any concrete injury caused by Imperial.

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

The district court had statutory subject-matter jurisdiction under 28 U.S.C. § 1331 over this action asserting a claim under 22 U.S.C. § 6082. On April 8, 2024, the district court entered an order dismissing the action against all remaining Defendants and closing the case. Dkt.360. On May 7, 2024, Plaintiffs filed a timely notice of appeal. Dkt.363. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

Imperial argued below and, to preserve the issue for further review if necessary, maintains here that Plaintiffs lack Article III standing because this lawsuit does not seek to remedy any concrete injury that Imperial caused. *Infra* at 56-57.

# STATEMENT OF THE ISSUES

1.     Did the Second Amended Complaint ("SAC") fail to plead a prima facie case of personal jurisdiction over Imperial Brands plc, a U.K. corporation that is not alleged to have committed any suit-related conduct in or directed at the United States?

2.     May the judgment of dismissal also be affirmed on the following independently dispositive alternative grounds: (a) Congress lacks extraterritorial legislative jurisdiction to regulate Imperial's alleged conduct; (b) for four independently dispositive reasons, the SAC fails to plead a plausible claim under Title III of the Helms-Burton Act; and (c) Plaintiffs lack Article III standing.

## STATEMENT REGARDING
## ADOPTION OF BRIEFS OF OTHER PARTIES

Imperial adopts by reference Argument Point I of the Brief for Appellees WPP plc, Young & Rubicam LLC, and BCW, LLC, headed "The District Court Correctly Held That It Lacked Personal Jurisdiction Over WPP."

## STATEMENT OF THE CASE

### A. Procedural Background

Congress enacted Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081-6085, to deter foreign investment in and business with Cuba. *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006). To that end, Title III confers on U.S. nationals whose property the Cuban Government confiscated a statutory right of action against one who "traffics" in that property. 22 U.S.C. § 6082.

In March 2020, Plaintiffs served notice of their intention to file this lawsuit, asserting that Defendants were using or benefiting from the use of a cigar factory in Havana, Cuba (the "RRHSC Property") that the Cuban Government confiscated in 1961 from a Cuban limited partnership (the "RRHSC Partnership"). Dkt.14-8 at 2-3.[1] Asserting that their ancestor owned the RRHSC Partnership, Plaintiffs stated that, unless Defendants ceased the alleged "trafficking" within thirty days, Plaintiffs would sue under Title III, seeking $405 million (treble the

---

[1] The record references in this brief use the page numbers in the headers generated by the district court's electronic filing system. *See* 11th Cir. R. 28-5.

7

alleged value of the RRHSC Property) plus attorneys' fees and interest. Dkt.14-8 at 12. *See* 22 U.S.C. § 6082(a)(1)(A), (3)(B).

Imperial responded that the threatened claim would be barred by the two-year statute of repose, *see* 22 U.S.C. § 6084, because publicly available information showed that the cigar factory was derelict and had been closed for nearly a decade. Dkt.14-9.

Undeterred, in August 2020, Plaintiffs filed this lawsuit, asserting a Title III claim against Corporación Habanos, S.A. ("Habanos"), Imperial, WPP plc, and two of WPP's U.S.-based subsidiaries.[2] Dkt.1 [Compl.] at 1-2, 4, 13, 20 (¶¶ 1, 3, 7, 40-41, 62). According to the Complaint, Habanos is the Cuban cigar company that allegedly used the factory. *Id.* at 4, 7 (¶¶ 6, 20). WPP's two U.S.-based subsidiaries were alleged to have performed promotional services for Habanos. *Id.* at 15-16 (¶¶ 48-49). And Imperial had an indirect, noncontrolling shareholding in Habanos. *Id.* at 3, 16-17 (¶¶ 5, 51-52); Dkt.208 [Second Am. Compl. ("SAC")] at 27-28 (¶ 86).

---

[2] WPP and its two U.S.-based subsidiaries will be referred to as "WPP Defendants," as they were in the district court proceedings.

After securing authorization from the relevant U.K. Secretary of State, in February 2021, Imperial moved to dismiss the Complaint for lack of subject-matter, personal, and legislative jurisdiction, and because the claim was time-barred on the face of the complaint and not plausibly pleaded, Dkt.71; Dkt.72. WPP Defendants, too, moved to dismiss. Dkt.73.

Imperial required British-government authorization to file its motion because "[t]he passage of the [Helms-Burton] Act caused an international uproar among United States' allies due to the extraterritorial reach of Title III," prompting the enactment of countermeasures. *Odebrecht Constr., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1311-1312 (S.D. Fla. 2012), *aff'd sub nom.*, *Odebrecht Constr., Inc. v. Secretary, Fla. Dep't of Transp.*, 715 F.3d 1268 (11th Cir. 2013) (citations omitted). Based on findings that Title III violates international law and impedes free trade, U.K. law prohibits U.K.-incorporated companies such as Imperial from complying with Title III, including from participating in Title III lawsuits without authorization. Dkt.14 at 4-5 (¶ 9); Dkt.14-2 [Regulation 2271/96] at 2 (Art. 5); Dkt.14-3 [Guidance

Note, Questions and Answers: adoption of update of the Blocking Statute (2018/C 277 I/03)] at 5-6 (¶ 4).[3]

A person who complies with Title III in violation of the U.K. law prohibition commits a criminal offense, punishable on indictment by an unlimited fine. *See* Dkt.14-5 [U.K. Statutory Instrument 1996 No. 3171] at 1-2 (¶ 2(1)(a)), 4 (Explanatory Note). The relevant U.K. Secretary of State, however, may authorize a U.K.-incorporated company to comply with Title III in whole or in part. Dkt.61-1 [U.K. Statutory Instrument 2020 No. 1660] at Part 3(6)]. The Secretary of State authorized Imperial to file and litigate a motion to dismiss this lawsuit. Dkt.64 at 2 (¶ 4); Dkt.64-1 [U.K. Statutory Instrument 2021 No. 132] at 3.

In March 2021, Plaintiffs filed an Amended Complaint, Dkt.82, and in April 2021, Imperial and WPP Defendants renewed their arguments for dismissal, Dkt.88; Dkt.91; Dkt.93. In August 2021, the United States filed a statement of interest, urging the district court to defer addressing Imperial's as-applied constitutional argument that Congress lacks

---

[3]     Upon leaving the European Union, the United Kingdom retained European Union Council Regulation 2271/96 as part of U.K. law. Dkt.61 [Status Report] at 2 (¶ 4); Dkt.61-1 [U.K. Statutory Instrument 2020 No. 1660].

legislative jurisdiction to regulate Imperial's alleged involvement in a concededly "non-U.S." Cuban business, until it had adjudicated Imperial's "arguments concerning lack of personal jurisdiction [which] raise substantial questions." Dkt.125 at 2. The district court has held Imperial's legislative-jurisdiction argument in abeyance ever since. Dkt.345 [Supp. R&R] at 3 n.1.

In March 2022, Plaintiffs filed the SAC, Dkt.208, following what Plaintiffs characterized as "an extensive amount of jurisdictional discovery" from WPP Defendants, Dkt.341 [Hr'g Tr.] at 197:18-19; *see* Dkt.168 at 2-3. Plaintiffs never sought jurisdictional discovery from Imperial. In April 2022, Imperial and WPP Defendants again renewed their motions to dismiss, Dkt.226; Dkt.227; Dkt.229, which the district court granted in the decision under review.

### B. Statement of Facts[4]

Plaintiffs are the descendants of Ramón Rodriguez Gutiérrez. Dkt.208 [SAC] at 1, 9-10 (¶¶ 1, 24-33). Mr. Rodriguez "owned and

---

[4] The SAC's non-conclusory factual allegations are assumed to be true for purposes of a prima facie personal-jurisdiction challenge under Rule 12(b)(2), *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006), and a motion to dismiss under Rule 12(b)(6), *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024).

controlled" a Cuban limited partnership, Ramón Rodriguez e Hijos Sociedad en Comandita (the "RRHSC Partnership"). Dkt.208 [SAC] at 1, 9 (¶¶ 1 n.1, 28). The RRHSC Partnership, in turn, owned real property in Havana, Cuba (the "RRHSC Property), comprising a factory and adjacent mixed-use building. Dkt.208 [SAC] at 1-2, 23 (¶¶ 1, 2, 73). In 1961, the Cuban Government confiscated the RRHSC Property and the RRHSC Partnership. Dkt.208 [SAC] at 2, 23 (¶¶ 3, 74).

Defendant Habanos is a Cuban company that is controlled by the Cuban Government. Dkt.208 [SAC] at 4, 10-11, 29 (¶¶ 7, 9, 35, 91). Habanos is the only defendant that is alleged to have used the RRHSC Property—allegedly, Habanos used the factory portion of the RRHSC Property to manufacture, sell, market, and distribute Cuban cigars. Dkt.208 [SAC] at 5-6, 12-13, 24-25 (¶¶ 10, 18, 41-42, 78-80). Non-party Tabacuba, a Cuban corporation, is the Cuban state tobacco monopoly. Dkt.208 [SAC] at 4, 6 (¶¶ 8, 18 n.9). Tabacuba has offices in the mixed-use building portion of the RRHSC Property. Dkt.208 [SAC] at 5-7, 24 (¶¶ 11, 18, 78-79).

Imperial is incorporated and headquartered in the United Kingdom. Dkt.208 [SAC] at 10 (¶ 34). In 2007, Imperial acquired a

12

Spanish company, Altadis, S.A.,[5] that had a fifty percent noncontrolling ownership interest in Habanos. Dkt.208 [SAC] at 3, 24 (¶¶ 5, 77). Pursuant to an agreement reached in April 2020, in October 2020, Imperial disposed of its "non-U.S." premium cigar business, including its indirect ownership interest in Habanos. Dkt.208 [SAC] at 27 (¶ 86 & n.43).

WPP plc is a holding company incorporated in the Bailiwick of Jersey with its principal place of business in London. Dkt.208 [SAC] at 11 (¶ 36).[6] WPP's U.S. subsidiaries, Young and Rubicam LLC ("Y&R") and Burson Cohn & Wolfe LLC ("BCW")—named in the SAC but over whom Plaintiffs have conceded there is no personal jurisdiction under Rule 4(k)(2), *see* Dkt.345 [Supp. R&R] at 9; Dkt.341 [Hr'g Tr.] at 155:20-

---

[5] Though nothing turns on this, as the record reflects, Altadis is a Spanish company, Dkt.341 [Hr'g Tr.] at 202:20-25; Dkt.208-4 [SAC Ex. 4A] at 4, not a Cuban company as Plaintiffs mistakenly represent, Br.4.

[6] The SAC incorrectly alleges that WPP has "dual headquarters in London and New York City." Dkt.208 [SAC] at 11 (¶ 36). As noted by the courts below, "WPP has consistently taken issue," and does so here, "with Plaintiffs' allegation that it maintains a principal place of business in New York." Dkt.345 [Supp. R&R] at 11. In any event, as the magistrate judge recognized, Plaintiffs "appear to have abandoned" the theory that WPP is subject to general personal jurisdiction, rendering this inaccuracy immaterial to the question presented. Dkt.345 at 12 n.5.

156:6—are incorporated in Delaware with their principal places of business in New York. Dkt.208 [SAC] at 11-12 (¶¶ 37-39).

Habanos allegedly hired WPP subsidiaries to assist in the promotion of Habanos cigars. Dkt.208 [SAC] at 8, 12, 16-17, 19-20, 25-26 (¶¶ 21, 41, 55-56, 62, 82). No later than 2017, these WPP subsidiaries helped Habanos establish "portals"—in other words, social media accounts—on Twitter, YouTube, and Instagram. Dkt.208 [SAC] at 8, 19 (¶¶ 22, 61). That web content was created by Spanish indirect subsidiaries of WPP. Dkt.318 at 8. According to the SAC, WPP, Y&R, and BCW purchased U.S.-based Internet domains and other networking services that were then provided to other WPP subsidiaries, including to distribute the Habanos marketing "to clients worldwide." Dkt.208 [SAC] at 16 (¶ 54).

Neither in the SAC nor Plaintiffs' two previous complaints, *see* Dkt.1, Dkt.82, did Plaintiffs allege that Imperial or any WPP entity has— or has ever had—any ownership interest in or control over the RRHSC Property. Plaintiffs also have never alleged that Imperial or any WPP entity has ever used or marketed the RRHSC Property or even visited it.

14

## C.    The Decision Under Review

In April 2024, the district judge adopted the magistrate judge's recommendation that the case be dismissed as to Imperial and WPP for lack of personal jurisdiction. Dkt.360 [Order]; *see* Dkt.345 [Supp. R&R].[7]

Plaintiffs had argued only that Imperial was subject to personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure because WPP's subsidiaries helped Habanos promote Cuban cigars online, and thereby created jurisdictional contacts with the United States that should be imputed from WPP's subsidiaries to WPP and then through Habanos to Imperial. Dkt.345 [Supp. R&R] at 9, 12-15.[8]

But the court determined that the SAC failed to establish a basis for personal jurisdiction over WPP because it did not allege the alleged promotional activity targeted the United States. Dkt.345 [Supp. R&R] at 13–15. Specifically, the court rejected Plaintiffs' arguments that WPP's

---

[7]    At the final hearing before the magistrate judge, Plaintiffs conceded that the district court lacked jurisdiction over both WPP's U.S. subsidiaries, and that dismissal of Y&R and BCW was appropriate. Br.4; Dkt.341 [Hr'g Tr.] at 6:11-14, 156:2-6, 158:3-21, 199:11-13.

[8]    At the motion-to-dismiss hearing, Plaintiffs "abandoned their theory of specific personal jurisdiction under the Florida long-arm statute as to all Defendants." Dkt.345 [Supp. R&R] at 9; Dkt.341 [Hr'g Tr.] at 6:11-14, 156:2-6.

15

subsidiaries' use of allegedly U.S.-based email servers and social media websites sufficed to establish specific personal jurisdiction over WPP. Dkt.345 [Supp. R&R] at 14. The court further held that Plaintiffs' arguments were "weakened by their failure to allege that WPP undertook additional steps to 'show that [the alleged] online activity [was] "aimed" at' the United States." Dkt.345 [Supp. R&R] at 14. The court accordingly held that Plaintiffs failed to "sufficiently allege minimum contacts as well as that the 'effects' of WPP's conduct were felt in the United States," and thus "failed to establish that this Court has personal jurisdiction over WPP under Rule 4(k)(2)." Dkt.345 [Supp. R&R] at 15. "Moreover, such failure extends to Imperial, given Plaintiffs' imputation theory." Dkt.345 [Supp. R&R] at 15.

Having adopted the recommended personal-jurisdiction dismissal, the district judge declined to reach Defendants' alternative arguments, Dkt.360 [Order] at 3-4, though the magistrate judge recommended accepting two of them, Dkt.345 [Supp. R&R] at 15-25. Specifically, the magistrate judge determined that (a) the claim is time-barred because the SAC alleges only trafficking before the repose period; and (b) the SAC failed to plausibly allege that Imperial and WPP knowingly and

intentionally trafficked in confiscated property without the authorization of the Rodriguez family. Dkt.345 [Supp. R&R] at 15, 18, 21-23; *see* 22 U.S.C. §§ 6023(13), 6082(a)(1).[9]

The April 2024 order was a final judgment because the district judge had previously dismissed Habanos for improper venue. Dkt.307 [Order] at 5. In that ruling, to which Plaintiffs did not object, Dkt.307 [Order] at 3, the magistrate judge found that "the allegations in the [SAC] reveal that no events giving rise to the claim occurred in this District," and that venue was also improper in New York because the SAC did not allege that Defendants' actionable conduct took place there either. Dkt.286 [R&R] at 8-11.

### D.  Standard of Review

This Court reviews a district court's dismissal for lack of personal jurisdiction de novo, accepting the allegations in the complaint as true. *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1307 n.1 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023).

---

[9]    Plaintiff Forns did not dispute that this claim was barred by the statutory cut-off in 22 U.S.C. § 6082(a)(4)(B), and did not object to the recommendation that his claim be dismissed. Dkt.345 [Supp. R&R] at 23, 25; *see* Dkt.347 [Corrected Objections].

This Court "may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the district court." *Stone v. Comm'r of Internal Revenue*, 86 F.4th 1320, 1324 (11th Cir. 2023) (affirming Rule 12(b) dismissal "albeit for different reasons" from those stated by the district court). This Court reviews de novo whether a complaint pleads a plausible claim, *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024), and subject-matter jurisdiction, *Stone*, 86 F.4th at 1324.

## SUMMARY OF ARGUMENT

This Court should affirm the judgment of dismissal. This lawsuit under Title III of the Helms-Burton Act arises from alleged "trafficking" in real property in Cuba (the "RRHSC Property") that the Cuban Government allegedly confiscated in 1961 from a Cuban entity that Plaintiffs' Cuban ancestors owned. In 2007, Defendant-Appellee Imperial acquired an indirect, noncontrolling interest in a Cuban cigar company, Defendant Habanos. Habanos allegedly used, and thereby "trafficked" in, the factory at the RRHSC Property.

I.      As the district court ruled, the Second Amended Complaint ("SAC") does not plead a prima facie case of personal jurisdiction over Imperial.

It is common ground that there is no general jurisdiction over Imperial, which is incorporated and headquartered in the United Kingdom. And there is no basis for specific jurisdiction either. *First*, all the alleged jurisdictional contacts were created by others—Habanos, which allegedly used the confiscated property and the WPP subsidiaries that allegedly performed promotional services for Habanos. The SAC alleges no basis to impute those entities' alleged contacts to Imperial.

*Second*, even if imputed to Imperial, the alleged jurisdictional contacts, comprising the use of globally accessible, non-interactive promotional websites that (a) did not target this forum and (b) post-dated Habanos's alleged use of the confiscated factory, do not create the required nexus between this case and this forum.

*Finally*, even if the other requirements for specific jurisdiction were satisfied, it would be unconstitutionally unreasonable to exercise jurisdiction here. Reflecting the view of many U.S. allies that the extraterritorial application of Title III impedes global trade and violates international law, the United Kingdom has enacted legislation that impairs Imperial's ability to defend itself from this claim.

II.    This Court may also affirm the judgment of dismissal on several other alternative grounds.

A.    Congress lacks extraterritorial legislative jurisdiction to regulate Imperial's alleged conduct. That conduct comprises a U.K. corporation (Imperial) acquiring an indirect, noncontrolling ownership interest in a Cuban corporation (Habanos) that allegedly used real property in Cuba for a Cuban-cigar business that, by law, cannot include the United States. The Due Process Clause of the Fifth Amendment

20

prohibits the exercise of legislative jurisdiction when, as here, there is no significant connection between the United States and the regulated subject matter.

B.    For several independent reasons, the SAC fails to plead a plausible Title III claim. *First*, the claim is barred by the two-year statute of repose in 22 U.S.C. § 6084. This "trafficking" claim against Imperial and WPP Defendants arises from Habanos's alleged use of the confiscated RRHSC Property. But even with the benefit of every favorable inference that can be drawn from the SAC and its exhibits, 2013 is the very latest date on which Habanos was using the RRHSC Property. Plaintiffs cannot nullify the statute of response through a combination of (a) unsupported "information-and-belief" assertions that Habanos's historical use of the RRHSC Property continued into the repose period, (b) allegations about actions that Imperial or WPP Defendants took during the repose period that have no connection to the confiscated RRHSC Property, or (c) allegations that other, unrelated entities used the RRHSC Property during the repose period.

*Second*, the SAC does not plausibly plead that Imperial or WPP Defendants knowingly and intentionally "trafficked" in confiscated

21

property without authorization from the United States nationals who held a claim to the property, as required by 22 U.S.C. § 6023(13)(A). The SAC contains only formulaic, conclusory assertions that Imperial and WPP Defendants knew that the RRHSC Property was confiscated. And the plain statutory language reveals Plaintiffs' error in arguing that a Title III plaintiff need not plead that the defendant knew that a United States national held a claim to the confiscated property.

*Third*, the SAC does not plead the trafficking element of the Title III claim because the alleged primary traffickers—Habanos and its controlling shareholder, Tabacuba—are alleged to be Cuban entities and agencies and instrumentalities of Cuba. The conduct of such entities is not trafficking under the plain language of 22 U.S.C. § 6023(13)(B)(iv).

*Fourth*, the SAC does not plead, as Title III requires, that the Cuban government confiscated the RRHSC Property from a United States national. To the contrary, it alleges that the RRHSC Property was confiscated from a Cuban person.

C.    Finally, Plaintiffs lack Article III standing because this lawsuit does not seek to remedy any concrete injury caused by Imperial. Recognizing that a panel of this Court has rejected this argument,

22

Imperial raises the argument to preserve it for further review, if necessary.

## ARGUMENT

**I.** **THE SECOND AMENDED COMPLAINT ("SAC") ESTABLISHES NO BASIS FOR PERSONAL JURISDICTION OVER IMPERIAL, A U.K. CORPORATION THAT IS NOT ALLEGED TO HAVE COMMITTED ANY CONDUCT IN OR DIRECTED AT THE UNITED STATES**

The SAC needed to allege facts establishing a prima facie case of personal jurisdiction over Imperial. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317-1318 (11th Cir. 2006); *see Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1313 (11th Cir. 2022) (Title III complaint failed to "allege[] facts sufficient to allow the United States courts to exercise either specific or general jurisdiction").[10] As the district court rightly concluded, the SAC fails to do so. Dkt.360 [Order] at 3.

It is common ground that Imperial is not subject to general jurisdiction here because it is incorporated and has its principal place of business overseas. Dkt.208 [SAC] at 10 (¶ 34). *See Teck Res.*, 43 F.4th at 1311-1312 (Title III defendant not subject general jurisdiction because its "principal place of business isn't in the United States, and it isn't incorporated here").

---

[10]    The prima-facie-case standard "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

As the district court held, Imperial is not subject to specific jurisdiction either. All the alleged jurisdictional contacts were created by others and the SAC establishes no basis to impute them to Imperial. The alleged contacts do not create a constitutionally sufficient nexus between the claim and this forum. And it would be unconstitutionally unreasonable to exercise jurisdiction over Imperial, given the United Kingdom's assertion of countervailing interests.

## A. Imperial Cannot Be Subjected To Personal Jurisdiction Based On Allegations That Others Used Confiscated Property In Cuba Or Promoted Cuban Cigars Online

Due process requires jurisdictional "contacts that the defendant *himself* creates with the forum State," not contacts between "the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original). But here, all the alleged suit-related conduct was performed by others. *Habanos* used the factory portion of the RRHSC Property and hired *WPP* subsidiaries to promote Habanos cigars online. Dkt.208 [SAC] at 16-17, 19-20, 24-25, 29-30 (¶¶ 54-56, 62, 78-80, 92). And *Tabacuba*—Habanos's controlling shareholder—has offices in the mixed-use portion of the RRHSC Property. Dkt.208 [SAC] at 4, 6, 12-14, 25 (¶¶ 7, 17, 42, 44, 80).

Plaintiffs reaffirm on appeal their theory that "[j]urisdiction over Imperial is based on the trafficking of the Rodriguez Family's confiscated Property completed in the United States by the WPP Defendants." Br.14; *see also id.* at 19-20. And seeking to impute to Imperial whatever jurisdictional contacts WPP's subsidiaries created when helping Habanos promote cigars online, Plaintiffs *label* the WPP Defendants "agents" of Imperial. Dkt.208 [SAC] at 5-7, 19-20, 25-27 (¶¶ 14-15, 20, 61, 64, 82, 84); *see* Br.16, 22, 26, 32, 36. That argument is unpreserved because Plaintiffs repudiated it below. Dkt.329 at 12 ("Plaintiffs do not allege that Imperial is liable for the conduct of a subsidiary or agent"). It is also unsupported by the SAC.

To plead jurisdiction based on contacts created by the defendant's agent, a complaint must "present[] factual allegations demonstrating an agency relationship." *Snow*, 450 F.3d at 1318; *see also First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-1779 (D.C. Cir. 1988) ("[A] bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction.") After Plaintiffs took jurisdictional discovery from WPP, *i.e.*, the purported "agent," they correctly alleged in the SAC that it was *Habanos*—not Imperial—that hired WPP's subsidiaries to provide

promotional services. Dkt.208 [SAC] at 16-17, 19-20 (¶¶ 54-56, 62). And when pressed at the motion-to-dismiss hearing, Plaintiffs' counsel confirmed that it was *Habanos* that retained those subsidiaries. Dkt.285 [Hr'g Tr.] at 97:5-25. Even in their brief on appeal, Plaintiffs state, correctly, that WPP's subsidiaries provided services to "Imperial's joint venture," meaning Habanos. Br.33.

To be sure, the SAC alleges that Imperial had an indirect, non-controlling interest in Habanos, Dkt.208 [SAC] at 3-4, 6-7, 10-11, 13-14 (¶¶ 5-6, 17, 35, 44), and posits that Imperial therefore retained WPP and its subsidiaries "*through* its ownership interest in Habanos," Dkt.208 [SAC] 12-14 (¶¶ 44, 61) (emphasis added). But that is an incorrect, factually unsupported legal argument, not a factual allegation that could establish a prima facie case of jurisdiction. Even if WPP Defendants' supposed jurisdictional contacts were imputed to *Habanos*, *i.e.*, WPP Defendants' purported principal, they could not be further imputed from Habanos to Imperial absent "allegations to support disregarding corporate separateness." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1294 (11th Cir. 2021); *see also Teck Resources*, 43 F.4th at 1312 (no imputation, absent showing that subsidiaries were "mere alter

27

egos" of their parent). Allegations that a shareholder "unilaterally controlled" the corporation, "ignored corporate formalities," and "comingled" assets, could suffice. *United States ex rel. Bibby v. Mortgage Inves. Corp.*, 987 F.3d 1340, 1354-1356 (11th Cir. 2021). But there are no such allegations here. To the contrary, the SAC dooms any veil-piercing argument by repeatedly asserting that Habanos was "controlled by Cuba," not by Imperial. Dkt.208 [SAC] at 4, 10-11, 29 (¶¶ 7, 9, 35, 91).

Plaintiffs rightly do not argue that Habanos's and Tabacuba's use of the RRHSC Property in Cuba authorizes personal jurisdiction over Imperial. Even if such use exposed Habanos or Tabacuba to personal jurisdiction (it does not, *infra* at 30), the SAC pleads no basis to impute those entities' alleged conduct to Imperial.

Finally, assertions that Imperial was aware of United States sanctions against Cuba, including Title III, and therefore of the risk of this lawsuit, are no substitute for the required jurisdictional contacts. Dkt.208 [SAC] at 3, 18, 20 (¶¶ 5, 60, 64-65). *See* Br.17-18, 45. "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010) (quoting *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). The foreseeability required by the Due Process Clause "'is that the defendant's *conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there.'" *Fraser*, 594 F.3d at 852 (emphasis added) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). As to Imperial, the SAC alleges no such "conduct and connection."

For the same reasons, Plaintiffs' pre-suit notice of their intention to sue, Br.32, 40, is jurisdictionally irrelevant. A defendant's purposeful in-forum activity is what provides constitutionally sufficient "fair warning" that the defendant may be subject to jurisdiction in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The SAC alleges no such activity on the part of Imperial, before or after the pre-suit notice.

### B. Even If Imputed To Imperial, Others' Alleged Jurisdictional Contacts Do Not Create The Required Nexus Between This Case And This Forum

Even if the SAC pleaded a basis to impute the alleged jurisdictional contacts to Imperial—which it does not—the district court correctly held that those contacts do not permit the exercise of specific jurisdiction

under the Due Process Clause of the Fifth Amendment and Federal Rule of Civil Procedure 4(k)(2).[11]

### 1. Allegations about others' use of globally accessible websites and of real property in Cuba do not show purposeful availment

For specific jurisdiction under Rule 4(k)(2), "'the defendant must have 'purposefully availed' itself of the privilege of conducting activities within the forum." *Teck Res.*, 43 F.4th at 1310 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

Habanos's and Tabacuba's alleged use of the RRHSC Property in Cuba cannot support specific jurisdiction under Rule 4(k)(2), as this Court held in *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).

So instead, Plaintiffs seek to base personal jurisdiction on WPP Defendants' alleged use of the internet to help Habanos promote a

---

[11]    Notwithstanding dissents in two out-of-circuit cases, Br.46-48, this Court has held that "courts should analyze personal jurisdiction under the Fifth Amendment using the same basic standards and tests that apply under the Fourteenth Amendment." *Teck Res. Ltd.*, 43 F.4th at 1308. Plaintiffs misdescribe *Devas Multimedia Private Ltd. v. Antrix Corp.*, 91 F.4th 1340 (9th Cir. 2024), which involves the question—irrelevant here—whether a foreign *state* must establish minimum contacts to be subject to personal jurisdiction under the Foreign Sovereign Immunities Act.

product using passive websites that can be accessed by everyone everywhere and that do not target this forum. Br.14, 19-20. The argument is meritless. Plaintiffs have conceded the absence of personal jurisdiction over two of the three WPP Defendants—Y&R and BCW. Dkt.345 [Supp. R&R] at 9; Dkt.341 [Hr'g Tr.] at 155:20-156:6. And the district court correctly held that WPP itself is not subject to personal jurisdiction either, as demonstrated in Point I of WPP Defendants' Brief, which is adopted here by reference.

Unable to show that WPP Defendants' alleged promotional work for Habanos targeted this forum, Plaintiffs are left arguing that WPP's "back-office operations" (the so-called "US Services") touched the United States. But specific jurisdiction cannot be based on such "'random, fortuitous, or attenuated' contacts." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Walden*, 571 U.S. at 286). Therefore, jurisdiction cannot be based on the fortuitous in-forum location of internet-based service providers and their servers. *See GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).

Finally, Plaintiffs are not helped by their incendiary refrain that the use of U.S.-hosted social-media platforms to promote Cuban cigars violated the Cuban Assets Control Regulations ("CACRs"). Br.28, 40, 44. This argument mistakenly conflates substantive law with personal jurisdiction. And it is incorrect, too. To promote the free flow of information, the CACRs permit U.S. social-media companies to provide social-media services to Cuban businesses, including businesses controlled by the Cuban Government, provided the websites are "widely available to the public at no cost to the user." *See* 31 C.F.R. § 515.578(a)(1), (4)(ii)(B). Nothing in the SAC suggests that Habanos's social-media sites were accessible only to paying subscribers.

### 2. This claim does not arise out of or relate to the alleged jurisdictional contacts

For specific jurisdiction, the claim "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 352 (2021) (citations and quotation marks omitted). The SAC does not satisfy this requirement because it does not allege that the facts giving rise to the claim, *i.e.*, Habanos's use of the factory portion of the RRHSC Property, were even happening at the same time as the jurisdictional contacts, *i.e.*, Habanos and WPP

32

Defendants' alleged use of social-media platforms to promote Habanos cigars.

As to the facts giving rise to the claim, according to the SAC, Habanos was using the factory at the RRHSC Property in 2010. Dkt.208 [SAC] at 25 (¶ 80). And Plaintiffs conceded that two photographs exhibited to the SAC that may show Habanos using the factory were taken no later than 2009 and 2013. Dkt.341 [Hr'g Tr.] at 61:16-62:1, 63:23-64:14; *see* Dkt.208-9; Dkt.208-10. As to the jurisdictional contacts, the SAC alleges that Habanos, assisted by WPP's subsidiaries, was using social-media platforms to promote its cigars online in 2017. Dkt.208 [SAC] at 8 (¶ 22). Jurisdictional contacts cannot support specific jurisdiction when—as here—they post-date the events giving rise to the claim. *See Waite,* 901 F.3d at 1315.

To be sure, the SAC contains a conclusory assertion that "[t]he use of the RRHSC Property by and for the benefit of Habanos and Imperial continued at least through October 2020." Dkt.208 [SAC] at 29 (¶ 91). Imperial allegedly disposed of its indirect interest in Habanos in October 2020, Dkt.208 [SAC] at 27–28 (¶ 86), but that does not support a plausible

inference that Habanos was using the factory at the RRHSC Property through October 2020.

Below, Plaintiffs stressed their allegation that, even if Habanos has not used the factory for years, Tabacuba used offices at the RRHSC Property "until at least October 29, 2020" or through the present. Dkt.341 [Hr'g Tr.] at 99:13-19. But Tabacuba and its place in the Cuban-cigar supply chain are "attenuated contacts," *Walden*, 571 U.S. at 286, that do nothing to demonstrate the essential "strong relationship among the defendant, the forum, and the litigation." *Ford Motor Co.*, 592 U.S. at 353.

**C.    It Would Be Unconstitutionally Unreasonable To Exercise Jurisdiction Over Imperial Given The United Kingdom's Assertion Of Countervailing Policy Interests**

Even if the other requirements of specific jurisdiction were satisfied, dismissal is required here because exercising personal jurisdiction in the transnational context of this matter would be unreasonable and offensive to "'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In the "transnational context," expansive exercises of personal jurisdiction can imperil international comity, implicating the "fair play and substantial justice" element of the due-process inquiry. *Daimler AG v. Bauman*, 571 U.S. 117, 140-142 (2014). So where, as here, the interests of a foreign sovereign are at stake, a court must not exercise personal jurisdiction without considering the "substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction." *Asahi*, 480 U.S. at 115 (emphasis in original). In addition, when assessing the reasonableness of asserting jurisdiction "in cases involving international defendants, courts should consider '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) (brackets in original) (quoting *Asahi*, 480 U.S. at 114).

United States allies, including the United Kingdom, where Imperial is based, object to the extraterritorial application of Title III to their citizens as a violation of international law that impairs global trade and the free movement of capital. *Supra* at 9-10. The United Kingdom has asserted its objection and interest by prohibiting U.K. companies like Imperial from complying with Title III under penalty of criminal

35

prosecution. *Supra* at 10. Imperial is only able to defend this lawsuit to the extent permitted by the U.K. government, and that permission is limited to litigating a motion to dismiss. *Supra* at 10.

The United Kingdom's "substantive policies," as reflected in its legislation, would be adversely "affected by the assertion of jurisdiction," *Asahi,* 480 U.S. at 115, over Imperial, which is being sued in respect of alleged conduct having no connection to this forum. And the "unique burdens," *id.* at 114, this lawsuit imposes on Imperial are far more severe in kind and magnitude than those that supported dismissal in *Asahi. See Asahi,* 480 U.S. at 114-116 (burden of litigating in another country rendered the exercise of jurisdiction "unreasonable and unfair").

These weighty considerations of comity to the United Kingdom and fairness to Imperial are not outweighed by "the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi,* 480 U.S. at 113. U.K. law—like the laws of those other U.S. allies that have enacted protective measures—prohibits the recognition and enforcement of any judgment rendered in a Title III action, Dkt.14-2 at 2 (Art. 4), confirming the State Department's prediction that Title III would "fail to provide an effective remedy for U.S. claimants." United States Dep't of State, Legal

Considerations Regarding Title III of the Libertad Bill, 141 Cong. Rec. S15,106, S15,108 (daily ed. Oct. 12, 1995). Moreover, as the State Department admonished Congress, far from promoting forum interests, Title III "flies in the face of important U.S. interests," including the nation's foreign-policy and business interests. *Id.* at S15,106-S15,108.

## II. THE JUDGMENT OF DISMISSAL MAY BE AFFIRMED ON SEVERAL ALTERNATIVE GROUNDS

### A. Congress Lacks Extraterritorial Legislative Jurisdiction To Regulate Imperial's Alleged Conduct

The Due Process Clause of the Fifth Amendment permits the exercise of legislative jurisdiction only if there is some "'minimal contact between a State and the regulated subject.'" *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016) (quoting *American Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000)); *see also Teck Res. Ltd.*, 43 F.4th at 1309 (extraterritorial application of federal law "'must not be arbitrary or fundamentally unfair'") (quoting *United States v. Noel*, 893 F.3d 1294, 1301 (11th Cir. 2018)). Title III cannot be applied here, based on allegations that Imperial, a U.K. entity, acquired a Spanish entity, Altadis, S.A., which had a non-controlling stake in a Cuban company, Habanos, which used real estate in Cuba for purposes of a concededly

"non-U.S." Cuban-cigar business that, by law, cannot include the United States.

To adjudicate a legislative-jurisdiction challenge, this Court looks to the minimum-contacts inquiry that applies in the personal-jurisdiction context, and to the choice-of-law rule that prohibits a state from applying its substantive law unless it has a "'significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *American Charities*, 221 F.3d at 1216 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)).

Applying this standard, this Court has upheld the extraterritorial application of federal statutes in cases where the operative events had a significant connection to the United States, such as where a U.S.-resident defendant used the U.S. banking system to commit crimes, *Baston*, 818 F.3d at 669-670, or a foreign defendant took a U.S. citizen hostage, *Noel*, 893 F.3d at 1301. But the SAC alleges no connection between Imperial and the United States.

Moreover, this Court "inquire[s] not only into the contacts between the regulated *party* and the state, but also into the contacts between the

regulated *subject matter* and the state," noting that legislative purpose is important in identifying the regulated subject matter. *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236-1240 (11th Cir. 2001) (emphasis in original). Here, the explicit purpose of Title III is to deter foreign investors from doing business in Cuba. *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (citing 22 U.S.C. § 6081(5), (6), (11)). Domestic law cannot be applied where—as here—the regulated subject matter comprises the business dealings of foreign nationals, relating to "persons, property, and events" overseas. *Gerling*, 267 F.3d at 1238.

Confirming that the Due Process Clause prohibits the application of Title III here, Regulation 2271/96 reflects that the extraterritorial application of Title III "violate[s] international law." Dkt.14-2 at 1. "In determining whether an extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle, the protective principle, or the territorial principle." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-1379 (11th Cir. 2011) (citations and footnotes omitted).

The "objective principle" does not support the application of Title III because there is no nexus between Imperial's alleged conduct and the United States. 634 F.3d at 1378 & n.4. As the State Department has recognized, it is "difficult to imagine" how the use of real property in Cuba "has a 'substantial effect' within the territory of the United States." Legal Considerations Regarding Title III of the Libertad Bill, *supra*, at S15, 106. The "protective principle" is also inapplicable, as Imperial's alleged conduct is not "generally recognized as a crime under the laws of states that have reasonably developed legal systems." *Ibarguen-Mosquera*, 634 F.3d at 1378-1379 & n.5. To the contrary, in the State Department's words: "The principles behind Title III are not consistent with the traditions of the international system and other states have not adopted similar laws." Legal Considerations Regarding Title III of the Libertad Bill, *supra*, at S15,107. And the "territorial principle" is inapplicable because no international agreement permits the United States to regulate a U.K. company's alleged business dealings in Cuba. *Ibarguen-Mosquera*, 634 F.3d at 1378-1379 & n.6.

Finally, Plaintiffs mistakenly argued below that Congress had legislative jurisdiction because they are United States citizens. Dkt.100

at 13. "[A] postoccurrence change of residence to the forum State— standing alone—[i]s insufficient to justify application of forum law." *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 426 (2003) (brackets in original) (quoting *Allstate*, 449 U.S. at 311); *see also Gerling*, 267 F.3d at 1238 n.6. (forum residence of victims' descendants was not a "jurisdictionally-significant contact" supporting the application of forum law).

**B.     The SAC Fails To Plead A Plausible Title III Claim**

The district court's judgment may also be affirmed because the SAC fails for several reasons to state a claim. As the magistrate judge determined: (1) the claim is time-barred because the only alleged trafficking in the RRHSC Property predated the repose period, and (2) the SAC does not allege that Imperial knowingly and intentionally trafficked in the RRHSC Property without the authorization of the United States nationals who allegedly hold a claim to that property. Dkt.345 [Supp. R&R] at 16-18, 21-22.

In addition, the SAC does not allege the "trafficking" element of a Title III claim because the alleged "primary traffickers" are Cuban entities whose conduct does not constitute trafficking. Finally, Title III

does not extend to property that—like the RRHSC Property—the Cuban Government confiscated from its own nationals.

### 1. As the SAC alleges only trafficking outside the two-year repose period, the claim is time-barred

A Title III claim "may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur." 22 U.S.C. § 6084. Because it runs from the last culpable act and not from accrual, § 6084 is a statute of repose, *California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017) (citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)), that "define[s] the scope of the cause of action," *CTS Corp.*, 573 U.S. at 16-17.[12]

This case was filed in August 2020, but all the "trafficking" alleged in the SAC long predated August 2018. As the magistrate judge concluded, Dkt.345 [Supp. R&R] at 16-18, dismissal is required as "it is apparent from the face of the complaint that the claim is time-barred."

---

[12] *See also Browne v. CTC Corp.*, 15 F.4th 175, 190 (2d Cir. 2021) ("A statute of repose, in contrast [to a statute of limitation], is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit.") (citation and quotation marks omitted); *Bryant v. United States*, 768 F.3d 1378, 1383 (11th Cir. 2014) (state law statute of repose "acts as a condition precedent to the action itself" and is "an inseparable part of the plaintiff's substantive right of action").

*Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1020 (11th Cir. 2024). *See Jones v. United States*, No. 22-13381, 2024 WL 837054, at *3 (11th Cir. Feb. 28, 2024) (affirming judgment of dismissal because all the "alleged wrongful conduct occurred" before the repose period).[13]

According to the SAC, Habanos was using the factory at the RRHSC Property in 2010. Dkt.208 [SAC] at 25 (¶ 80). But the SAC alleges no facts showing that such use continued through August 2018. The SAC exhibits two photographs that purportedly show Habanos using the factory, *see* Dkt.208-9; Dkt.208-10, but Plaintiffs conceded that they were taken no later than 2009 and 2013, Dkt.341 [Hr'g Tr.] at 61:16-62:1, 63:23–64:14.

On the basis that Imperial and WPP purportedly have "exclusive knowledge," Plaintiffs request that the pleading standard be "lowered," Br.56, to accommodate their unadorned "information and belief"

---

[13]    Because the SAC affirmatively alleges only time-barred conduct, Plaintiffs are not assisted by the rule that a complaint need not "negate" a time-bar defense, *see Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024), or by *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020). Unlike the SAC, the complaint in *Havana Docks* alleged facts showing a single, ongoing course of trafficking that continued into the repose period. *See id.* at *11-12.

assertion that Habanos "continuously used the RRHSC property without authorization from the Rodriguez family since 2010, and likely for many years before that, until the present." Dkt.208 [SAC] at 15 (¶ 78). Plaintiffs do not explain why Imperial or WPP Defendants would have *any* knowledge of Habanos's use of the RRHSC Property, but, regardless, information-and-belief pleading is not credited as true when—as here—there are no factual allegations showing the plausibility of the asserted belief. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).

Plaintiffs note the SAC's allegations that WPP's subsidiaries provided Habanos advertising services until October 2020, Dkt.208 [SAC] at 8 (¶ 21), 18 (¶ 61), and that Imperial held its indirect noncontrolling ownership interest in Habanos through October 29, 2020, Dkt.208 [SAC] at 10 (¶ 35), 27 (¶ 86). *See* Br.50, 52-56 & n.8. But this is a claim for trafficking in the RRHSC Property, and there is no allegation that Habanos used that property at any time after 2013.

On appeal, Plaintiffs urge that two other entities had offices in the mixed-use portion of the RRHSC Property during the repose period. Br.52–53. But one of them—Empresa "La Vega"—is referenced only in passing as "the Cuban state tobacco leaf monopoly company," Dkt.208

44

[SAC] at 2 (¶ 2), with no allegation that it ever used the RRHSC Property, much less facts to impute such use to Imperial or WPP.[14]

The SAC does allege that Tabacuba—the Cuban state tobacco monopoly company—used offices in the RRHSC Property during the repose period and that "[e]very piece of tobacco that comes from Cuba has at one point been purchased and later resold by Tabacuba." Dkt.208 [SAC] at 5–7 (¶¶ 11, 18 & n.9); *see id.* at 24 (¶ 78 & n.38); *see id.* at 2 (¶ 2). As the magistrate judge rightly concluded, Tabacuba's position somewhere back in the Cuban-tobacco supply chain is "far too attenuated" to establish trafficking by Imperial and WPP Defendants. Dkt.345 [Supp. R&R] at 18.

Plaintiffs accuse the magistrate judge of adding an extratextual "attenuation exception," and urge that Title III reaches "remote parties" that merely profit from another's (here, Tabacuba's) trafficking in confiscated property. Br.54–55. But the SAC alleges no facts showing that Imperial or WPP or its subsidiaries profited from Tabacuba's

---

[14] The Court should decline Plaintiffs' invitation to consider materials outside the SAC, Br.53, 56 n.9, when determining whether the SAC pleads a claim. *See, e.g., Jackson v. City of Atlanta, Georgia,* 97 F.4th 1343, 1350 (11th Cir. 2024).

"trafficking" in offices at the RRHSC Property, much less that they did so "knowingly," 22 U.S.C. § 6023(9), (13). The SAC does not allege that Imperial or WPP Defendants knew or had any reason to know that Tabacuba even had offices at the RRHSC Property. Moreover, as more fully set forth below, Tabacuba is a Cuban corporation whose alleged use of the offices does not constitute trafficking. 22 U.S.C. § 6023(13)(B)(iv). *Infra* at 51-52.

### 2. The SAC does not plead that Imperial or WPP acted knowingly and intentionally

Trafficking consists of "knowingly and intentionally" engaging in certain commercial uses of "confiscated property" "without the authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(13)(A).[15] As the magistrate judge concluded, the SAC fails to allege that Imperial or any WPP entity knew either (a) that the RRHSC Property was confiscated or (b) that a United States national held a claim to that property. Dkt.345 [Supp. R&R] at 21-22.

---

[15]    "[K]nowingly" means "with knowledge or having reason to know." *Id.* § 6023(9).

46

### a) The SAC does not allege that Imperial or WPP knew that the RRHSC Property was confiscated

Plaintiffs have never disputed that they were required to plead that Imperial and WPP Defendants knew that the RRHSC Property was confiscated, and rightly so. Consistent with the sponsors' commitment that "the only companies that will run afoul of [Title III] are those that are knowingly and intentionally trafficking in the stolen property of U.S. citizens," 142 Cong. Rec. H1724, H1737 (daily ed. Mar. 6, 1996), knowledge of the past confiscation is a component of the wrong. *Cf. Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (civil claim for knowingly distributing child pornography required knowledge that the individual was a minor) (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994)).

The magistrate judge correctly rejected Plaintiffs' contention that "multiple allegations of the [SAC] plead knowing and intentional conduct." Br.57. The cited paragraphs contain only formulaic assertions that Imperial or WPP Defendants acted "knowingly and intentionally" or that Imperial or WPP Defendants "knew," "knew, or had reason to know," or "knew or should have known." *Id.* (citing Dkt.208 [SAC] at 24-30

(¶¶ 77, 81, 84, 85, 88, 90, 81, 92)). One of those paragraphs contains exclusively quotations of the statutory language. Dkt.208 [SAC] at 28-29 (¶ 88). The plausibility standard "'requires more than labels and conclusions,'" and Plaintiffs' "'formulaic recitation of the elements of a cause of action will not do.'" *Moore*, 109 F.4th at 1365 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The SAC's unsupported assertion that "each Defendant continued to traffic in the confiscated RRHSC Property" after Plaintiffs served a pre-suit "thirty-day notice," Dkt.208 [SAC] (¶ 99) is equally conclusory and therefore does not plead knowledge and intent with respect to the post-notice period. Unlike *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088 (S.D. Fla. 2022), where the "undisputed facts" showed continued use of the confiscated property after receipt of the pre-suit notice, *id.* at 1158, the SAC does not allege that Imperial or WPP Defendants did anything pertaining to the RRHSC Property after Plaintiffs sent their March 2020 notice.

**b)** **The SAC also fails to allege that Imperial or WPP knew that they were acting without required authorization from a United States national**

The magistrate judge correctly determined that the SAC does not plausibly plead a Title III claim because it does not allege that Imperial or WPP Defendants knew that they were acting without authorization from a United States national claimant to the RRHSC Property. Dkt.345 [Supp. R&R] at 22. It is common ground that the SAC does not make that allegation.[16] Plaintiffs' sole argument on appeal is that there was no need to allege that Imperial or WPP Defendants knew that a United States national had not authorized their alleged conduct because the "knowingly and intentionally" requirement modifies only the verbs in 22 U.S.C. § 6023(13)(A). Br.58.

Interpreting a similarly phrased statute, *Ruan v. United States*, 597 U.S. 450 (2022), held that the "knowingly and intentionally" requirement modified, not just the verbs following it, but also the "except as authorized" requirement. *Id.* at 456. The court rejected an argument

---

[16]    Because Plaintiffs' claim was not submitted to the Foreign Claims Settlement Commission, Dkt.208 [SAC] at 23 (¶ 75), theirs is not on the public register of certified claims.

like Plaintiffs' argument here to elevate "the grammatical positioning of the statutory language" to defeat the ordinary meaning that Congress required knowledge of "the critical thing distinguishing wrongful from proper conduct"—that is, the lack of authorization. *Id.* at 460, 466.[17] Just as in criminal cases like *Ruan*, statutory scienter requirements must be strictly enforced in treble-damages cases such as this one to assuage "concerns about fair notice and open-ended liability." *United Health Services, Inc. v. United States*, 579 U.S. 176, 192 (2016).

Indeed, Plaintiffs correctly acknowledge that the knowingly-and-intentionally requirement applies to the confiscated-property element, which, too, is not "an act by a defendant," Br.58, yet offer no basis to treat the authorization requirement differently. *See X-Citement Video, Inc.*, 513 U.S. at 77-78 ("[A]s a matter of grammar it is difficult to conclude that the word 'knowingly' modifies one of the elements in [the statute], but not the other.").

---

[17] The "knowingly and intentionally" language in §6023(13)(A) does not follow a phrase or list, so the rule-of-the-last-antecedent and series-qualifier canons are inapplicable on their own terms. *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) (cited in Br.59). Anyway, as in *Heyman*, this Court should eschew "a wooden application of the canons [that] would supplant rather than supply ordinary meaning." *Id.*

### 3. The SAC does not plead the trafficking element of a Title III claim because Habanos's and Tabacuba's alleged use of the RRHSC Property is not "trafficking"

Plaintiffs posit that Imperial and WPP Defendants are "remote parties" that are liable under 22 U.S.C. § 6023(13) for profiting from a "primary trafficker's trafficking." Br.55. According to the SAC, Habanos and Tabacuba trafficked in the RRHSC Property and Imperial profited "through its ownership interest in Habanos." Dkt.208 [SAC] at 13-14 (¶ 44); *see also* Dkt.208 at 5, 12-13, 24-26, 29 (¶¶ 10-11, 13, 42, 78-80, 82, 91). WPP Defendants' liability, too, flows entirely from the alleged trafficking of Habanos and Tabacuba. Dkt.208 [SAC] at 19-20, 26-27, 30 (¶¶ 61-62, 84, 96).

But the "primary trafficker[s]"—Habanos and Tabacuba—are Cuban entities, Dkt.208 [SAC] at 2, 10-11 (¶¶ 2, 35), and allegedly agencies or instrumentalities of the Cuban government, Dkt.208 [SAC] at 12-13 (¶¶ 9, 42). The definition of "trafficking" excludes "transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba." 22 U.S.C. § 6023(13)(B)(iv). "Person" includes "any person or entity, including any agency or instrumentality of a foreign state." *Id*. § 6023(11). Therefore, Habanos's and Tabacuba's alleged use

of the RRHSC Property is not trafficking, so Imperial and WPP Defendants did not profit from trafficking "by" Habanos and Tabacuba or engage in trafficking "through" them. 22 U.S.C. § 6023(13)(A)(iii).

In the magistrate judge's view, to promote Congress's presumed intent, "agency or instrumentality of a foreign state" as used in 22 U.S.C. § 6023(11) should be read to exclude agencies or instrumentalities *of Cuba.* Dkt.345 [Supp. R&R] at 18-19. Even if that were correct, Habanos and Tabacuba are still Cuban "entit[ies]" whose conduct is not trafficking. But it is not correct. Nothing in the statutory text supports the exclusion of *Cuban* agencies or instrumentalities. And even if Title III does not fully accomplish Congress's objectives as enacted, it is for Congress, not the Court, to amend it. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 937-938 (11th Cir. 2023) (Jordan, J., concurring); *see also Baker Botts, LLP v. ASARCO LLC*, 576 U.S. 121, 135 (2015) (a court's "job is to follow the text even if doing so will supposedly undercut a basic objective of the statute").

### 4. The SAC does not plead that the Cuban Government confiscated the RRHSC Property from a United States national

It is common ground that the SAC does not allege that the Cuban Government confiscated the RRHSC Property from a United States national. *See* Dkt.245 [Opp. to Joint Mot. to Dismiss] at 23. To the contrary, the RRHSC Property allegedly was owned by and confiscated from a Cuban entity, the RRHSC Partnership. Dkt.208 [SAC] at 1, 23 (¶¶ 1, 73). And the RRHSC Partnership, in turn, was owned by and confiscated from Plaintiffs' Cuban ancestors. Dkt.208 [SAC] at 2, 9 (¶¶ 3, 28).

Because Title III does not abrogate the domestic takings rule, it does not extend to trafficking in property confiscated from Cuban nationals. With "deep roots not only in international law but also in United States foreign policy," the domestic takings rule provides that "'[w]hat another country has done in the way of taking over property of its nationals . . . is not a matter for judicial consideration here.'" *Federal Republic of Germany v. Philipp*, 592 U.S. 169, 177 (2021) (ellipsis in original) (quoting *United States v. Belmont*, 301 U.S. 324, 332 (1937)). Like the Foreign Sovereign Immunities Act addressed in *Philipp*,

"nothing in [Title III] purported to alter any rule of international law, including the domestic takings rule," so the statute must be applied consistent with that rule. *Id.* at 179.[18]

Far from encompassing property that the Cuban Government took from its own citizens, every textual indication is that Congress was concerned only with the "wrongful confiscation of … property belonging to United States nationals," 22 U.S.C. § 6081(2), and with the "claims of United States nationals who had property wrongfully confiscated," *id.* § 6081(6)(B). Title III therefore purports to create a remedy for "United States nationals who were the victims of these confiscations," *id.* § 6081(11). Corroborating its exclusive focus on property expropriated from United States nationals, Congress enacted Title III in reliance on: (a) the property rights guaranteed by the United States Constitution, 22 U.S.C. § 6081(1), which are inapplicable to a foreign national's overseas property, *Belmont*, 301 U.S. at 332, and (b) international law, 22 U.S.C. § 6081(8), (9), which similarly is unconcerned with "what a country does

---

[18]     Like the FSIA, Title III abrogates the federal law act of state doctrine, 22 U.S.C. § 6082(6), to permit claims arising from Cuba's confiscation of "American-owned property," *Philipp*, 592 U.S. at 179, but that abrogation has no impact on the separate, international-law-derived domestic-takings rule, *id.*

to property belonging to its own citizens within its own borders," *Philipp*, 592 U.S. at 176. All of this textual evidence of Congress's purpose is properly considered when interpreting Title III. *United States v. Bryant*, 996 F.3d 1243, 1257 (11th Cir. 2021). Further supporting the meaning of the words that Congress used, "statutes affecting international relations" should be interpreted "to avoid, where possible" the "friction" that would result if countries were to adjudicate claims arising from a foreign government's confiscation of property from its own nationals. *Philipp*, 592 U.S. at 184-185.

The magistrate judge did not engage with these arguments and did not acknowledge a district court decision holding that Title III is limited to trafficking in property confiscated from United States nationals. *See Regueiro v. American Airlines, Inc.*, No. 19-cv-23965, 2022 WL 2399748, at *2, 6-8 (S.D. Fla. May 20, 2022), *report and recommendation adopted in relevant part*, 2022 WL 2352414 (S.D. Fla. June 30, 2022).

Instead, the magistrate judge recommended a ruling in Plaintiffs' favor by relying on *De Fernandez v. Crowley Holdings, Inc.*, No. 21-cv-20443, 2023 WL 2646346 (S.D. Fla. Mar. 27, 2023). Dkt.345 [Supp. R&R] at [24–25]. *De Fernandez* gave dispositive weight to the use of the word

"any" in 22 U.S.C. § 6082(a)(1)(A), which provides that a person who "traffics in property which was confiscated by the Cuban Government" "shall be liable to *any* United States national who owns the claim to such property." 2023 WL 2646346, at *2 (emphasis in original). But that elides the relevant question—whether confiscations from Cuban citizens are covered. And it violates the requirement that statutory provisions be interpreted in the context of the overall statute, not in isolation. *Bryant*, 996 F.3d at 1254. Here, the statutory language and context supports Imperial and WPP Defendants.

### C. Plaintiffs Lack Article III Standing Because This Lawsuit Does Not Seek To Remedy Any Concrete Injury Caused By Imperial

As Imperial showed below, the SAC fails to plead that Plaintiffs have Article III standing. Dkt.227 at 14-19. A panel of this Court rejected this argument in *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 923-928 (11th Cir. 2023). Imperial raises the argument here to preserve it for further review, if necessary. *See United States v. Campbell*, 26 F.4th 860, 875 (11th Cir. 2022) (discussing forfeiture of issues omitted from initial brief).

Plaintiffs have no concrete injury because Imperial's alleged benefiting from the use of property that Plaintiffs concededly do not own, Dkt.99 at 9, lacks any "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quotations omitted). Contrary to *Garcia-Bengochea*, 57 F.4th 916 at 925, a person whose property was confiscated by the Cuban Government lacks the ownership interest required to bring an unjust-enrichment claim against a subsequent user. *Glen* , 450 F.3dat 1254 & n.1.

Plaintiffs also cannot satisfy the Article III causation requirement because the statutory remedy is untethered to any alleged injury caused by Imperial. On its face, Title III remedies "[t]he wrongful confiscation or taking of property belonging to United States nationals *by the Cuban Government*." 22 U.S.C. § 6081(2) (emphasis added). Thus, the Title III remedy is calculated by reference to the value of the RRHSC Property the Cuban Government confiscated six decades ago, plus interest for a period predating by decades Imperial and WPP Defendants' alleged trafficking, Dkt.208 [SAC] at 32 (¶¶ 103-104); *see* 22 U.S.C. § 6082(a)(1)(A)(i), (3)(C).

## CONCLUSION

The judgment of dismissal should be affirmed.

Respectfully submitted,

/s/ *Andrew Rhys Davies*

BRADLEY S. PENSYL
JUSTIN L. ORMAND
ALLEN OVERY SHEARMAN STERLING
US LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
bradley.pensyl@aoshearman.com
justin.ormand@aoshearman.com

WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
andrew.davies@wilmerhale.com

October 16, 2024

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 10,424 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Century Schoolbook font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Andrew Rhys Davies*
ANDREW RHYS DAVIES

October 16, 2024

# ADDENDUM

# ADDENDUM
# TABLE OF CONTENTS

Page

22 U.S.C.

§ 6023 ...................................................................... Add.1

§ 6081 ...................................................................... Add.5

§ 6082 ...................................................................... Add.7

§ 6084 ...................................................................... Add.13

United States Code Annotated
   Title 22. Foreign Relations and Intercourse
      Chapter 69A. Cuban Liberty and Democratic Solidarity (Libertad) (Refs & Annos)

22 U.S.C.A. § 6023

§ 6023. Definitions

Effective: March 12, 1996
Currentness

As used in this chapter, the following terms have the following meanings:

**(1) Agency or instrumentality of a foreign state**

The term "agency or instrumentality of a foreign state" has the meaning given that term in section 1603(b) of Title 28.

**(2) Appropriate congressional committees**

The term "appropriate congressional committees" means the Committee on International Relations and the Committee on Appropriations of the House of Representatives and the Committee on Foreign Relations and the Committee on Appropriations of the Senate.

**(3) Commercial activity**

The term "commercial activity" has the meaning given that term in section 1603(d) of Title 28.

**(4) Confiscated**

As used in subchapters I and III, the term "confiscated" refers to--

**(A)** the nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property, on or after January 1, 1959--

**(i)** without the property having been returned or adequate and effective compensation provided; or

**(ii)** without the claim to the property having been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure; and

**(B)** the repudiation by the Cuban Government of, the default by the Cuban Government on, or the failure of the Cuban Government to pay, on or after January 1, 1959--

# Add.1

**(i)** a debt of any enterprise which has been nationalized, expropriated, or otherwise taken by the Cuban Government;

**(ii)** a debt which is a charge on property nationalized, expropriated, or otherwise taken by the Cuban Government; or

**(iii)** a debt which was incurred by the Cuban Government in satisfaction or settlement of a confiscated property claim.

**(5) Cuban Government**

**(A)** The term "Cuban Government" includes the government of any political subdivision of Cuba, and any agency or instrumentality of the Government of Cuba.

**(B)** For purposes of subparagraph (A), the term "agency or instrumentality of the Government of Cuba" means an agency or instrumentality of a foreign state as defined in section 1603(b) of Title 28, with each reference in such section to "a foreign state" deemed to be a reference to "Cuba".

**(6) Democratically elected government in Cuba**

The term "democratically elected government in Cuba" means a government determined by the President to have met the requirements of section 6066 of this title.

**(7) Economic embargo of Cuba**

The term "economic embargo of Cuba" refers to--

**(A)** the economic embargo (including all restrictions on trade or transactions with, and travel to or from, Cuba, and all restrictions on transactions in property in which Cuba or nationals of Cuba have an interest) that was imposed against Cuba pursuant to section 2370(a) of this title, section 4305(b) of Title 50, the Cuban Democracy Act of 1992 (22 U.S.C. 6001 and following), or any other provision of law; and

**(B)** the restrictions imposed by section 902(c) of the Food Security Act of 1985.

**(8) Foreign national**

The term "foreign national" means--

**(A)** an alien; or

**(B)** any corporation, trust, partnership, or other juridical entity not organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States.

# Add.2

**(9) Knowingly**

The term "knowingly" means with knowledge or having reason to know.

**(10) Official of the Cuban Government or the ruling political party in Cuba**

The term "official of the Cuban Government or the ruling political party in Cuba" refers to any member of the Council of Ministers, Council of State, central committee of the Communist Party of Cuba, or the Politburo of Cuba, or their equivalents.

**(11) Person**

The term "person" means any person or entity, including any agency or instrumentality of a foreign state.

**(12) Property**

**(A)** The term "property" means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest.

**(B)** For purposes of subchapter III of this chapter, the term "property" does not include real property used for residential purposes unless, as of March 12, 1996--

**(i)** the claim to the property is held by a United States national and the claim has been certified under title V of the International Claims Settlement Act of 1949; or

**(ii)** the property is occupied by an official of the Cuban Government or the ruling political party in Cuba.

**(13) Traffics**

**(A)** As used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property if that person knowingly and intentionally--

**(i)** sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,

**(ii)** engages in a commercial activity using or otherwise benefiting from confiscated property, or

# Add.3

**(iii)** causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,

without the authorization of any United States national who holds a claim to the property.

**(B)** The term "traffics" does not include--

**(i)** the delivery of international telecommunication signals to Cuba;

**(ii)** the trading or holding of securities publicly traded or held, unless the trading is with or by a person determined by the Secretary of the Treasury to be a specially designated national;

**(iii)** transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel; or

**(iv)** transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba, and who is not an official of the Cuban Government or the ruling political party in Cuba.

**(14) Transition government in Cuba**

The term "transition government in Cuba" means a government that the President determines is a transition government consistent with the requirements and factors set forth in section 6065 of this title.

**(15) United States national**

The term "United States national" means--

**(A)** any United States citizen; or

**(B)** any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States.

**CREDIT(S)**

(Pub.L. 104-114, § 4, Mar. 12, 1996, 110 Stat. 789.)

22 U.S.C.A. § 6023, 22 USCA § 6023
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Add.4**

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 4

United States Code Annotated
  Title 22. Foreign Relations and Intercourse
    Chapter 69A. Cuban Liberty and Democratic Solidarity (Libertad) (Refs & Annos)
      Subchapter III. Protection of Property Rights of United States Nationals (Refs & Annos)

22 U.S.C.A. § 6081

§ 6081. Findings

Effective: August 1, 1996
Currentness

The Congress makes the following findings:

**(1)** Individuals enjoy a fundamental right to own and enjoy property which is enshrined in the United States Constitution.

**(2)** The wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development.

**(3)** Since Fidel Castro seized power in Cuba in 1959--

  **(A)** he has trampled on the fundamental rights of the Cuban people; and

  **(B)** through his personal despotism, he has confiscated the property of--

    **(i)** millions of his own citizens;

    **(ii)** thousands of United States nationals; and

    **(iii)** thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States.

**(4)** It is in the interest of the Cuban people that the Cuban Government respect equally the property rights of Cuban nationals and nationals of other countries.

**(5)** The Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals.

# Add.5

**(6)** This "trafficking" in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus undermines the foreign policy of the United States--

**(A)** to bring democratic institutions to Cuba through the pressure of a general economic embargo at a time when the Castro regime has proven to be vulnerable to international economic pressure; and

**(B)** to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government.

**(7)** The United States Department of State has notified other governments that the transfer to third parties of properties confiscated by the Cuban Government "would complicate any attempt to return them to their original owners".

**(8)** The international judicial system, as currently structured, lacks fully effective remedies for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property.

**(9)** International law recognizes that a nation has the ability to provide for rules of law with respect to conduct outside its territory that has or is intended to have substantial effect within its territory.

**(10)** The United States Government has an obligation to its citizens to provide protection against wrongful confiscations by foreign nations and their citizens, including the provision of private remedies.

**(11)** To deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures.

### CREDIT(S)

(Pub.L. 104-114, Title III, § 301, Mar. 12, 1996, 110 Stat. 814.)

22 U.S.C.A. § 6081, 22 USCA § 6081
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Add.6**

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 22. Foreign Relations and Intercourse
    Chapter 69A. Cuban Liberty and Democratic Solidarity (Libertad) (Refs & Annos)
      Subchapter III. Protection of Property Rights of United States Nationals (Refs & Annos)

22 U.S.C.A. § 6082

§ 6082. Liability for trafficking in confiscated property claimed by United States nationals

Effective: August 1, 1996
Currentness

**(a) Civil remedy**

**(1) Liability for trafficking**

**(A)** Except as otherwise provided in this section, any person that, after the end of the 3-month period beginning on the effective date of this subchapter, traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages in an amount equal to the sum of--

**(i)** the amount which is the greater of--

**(I)** the amount, if any, certified to the claimant by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949, plus interest;

**(II)** the amount determined under section 6083(a)(2) of this title, plus interest; or

**(III)** the fair market value of that property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater; and

**(ii)** court costs and reasonable attorneys' fees.

**(B)** Interest under subparagraph (A)(i) shall be at the rate set forth in section 1961 of Title 28, computed by the court from the date of confiscation of the property involved to the date on which the action is brought under this subsection.

**(2) Presumption in favor of the certified claims**

There shall be a presumption that the amount for which a person is liable under clause (i) of paragraph (1)(A) is the amount that is certified as described in subclause (I) of that clause. The presumption shall be rebuttable by clear and convincing evidence that the amount described in subclause (II) or (III) of that clause is the appropriate amount of liability under that clause.

## Add.7

**(3) Increased liability**

**(A)** Any person that traffics in confiscated property for which liability is incurred under paragraph (1) shall, if a United States national owns a claim with respect to that property which was certified by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949, be liable for damages computed in accordance with subparagraph (C).

**(B)** If the claimant in an action under this subsection (other than a United States national to whom subparagraph (A) applies) provides, after the end of the 3-month period described in paragraph (1) notice to--

  **(i)** a person against whom the action is to be initiated, or

  **(ii)** a person who is to be joined as a defendant in the action,

  at least 30 days before initiating the action or joining such person as a defendant, as the case may be, and that person, after the end of the 30-day period beginning on the date the notice is provided, traffics in the confiscated property that is the subject of the action, then that person shall be liable to that claimant for damages computed in accordance with subparagraph (C).

**(C)** Damages for which a person is liable under subparagraph (A) or subparagraph (B) are money damages in an amount equal to the sum of--

  **(i)** the amount determined under paragraph (1)(A)(ii), and

  **(ii)** 3 times the amount determined applicable under paragraph (1)(A)(i).

**(D)** Notice to a person under subparagraph (B)--

  **(i)** shall be in writing;

  **(ii)** shall be posted by certified mail or personally delivered to the person; and

  **(iii)** shall contain--

    **(I)** a statement of intention to commence the action under this section or to join the person as a defendant (as the case may be), together with the reasons therefor;

    **(II)** a demand that the unlawful trafficking in the claimant's property cease immediately; and

# Add.8

**(III)** a copy of the summary statement published under paragraph (8).

**(4) Applicability**

**(A)** Except as otherwise provided in this paragraph, actions may be brought under paragraph (1) with respect to property confiscated before, on, or after March 12, 1996.

**(B)** In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996.

**(C)** In the case of property confiscated on or after March 12, 1996, a United States national who, after the property is confiscated, acquires ownership of a claim to the property by assignment for value, may not bring an action on the claim under this section.

**(5) Treatment of certain actions**

**(A)** In the case of a United States national who was eligible to file a claim with the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 but did not so file the claim, that United States national may not bring an action on that claim under this section.

**(B)** In the case of any action brought under this section by a United States national whose underlying claim in the action was timely filed with the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 but was denied by the Commission, the court shall accept the findings of the Commission on the claim as conclusive in the action under this section.

**(C)** A United States national, other than a United States national bringing an action under this section on a claim certified under title V of the International Claims Settlement Act of 1949, may not bring an action on a claim under this section before the end of the 2-year period beginning on March 12, 1996.

**(D)** An interest in property for which a United States national has a claim certified under title V of the International Claims Settlement Act of 1949 may not be the subject of a claim in an action under this section by any other person. Any person bringing an action under this section whose claim has not been so certified shall have the burden of establishing for the court that the interest in property that is the subject of the claim is not the subject of a claim so certified.

**(6) Inapplicability of act of state doctrine**

No court of the United States shall decline, based upon the act of state doctrine, to make a determination on the merits in an action brought under paragraph (1).

**(7) Licenses not required**

# Add.9

**(A)** Notwithstanding any other provision of law, an action under this section may be brought and may be settled, and a judgment rendered in such action may be enforced, without obtaining any license or other permission from any agency of the United States, except that this paragraph shall not apply to the execution of a judgment against, or the settlement of actions involving, property blocked under the authorities of section 4305(b) of Title 50, that were being exercised on July 1, 1977, as a result of a national emergency declared by the President before such date, and are being exercised on March 12, 1996.

**(B)** Notwithstanding any other provision of law, and for purposes of this subchapter only, any claim against the Cuban Government shall not be deemed to be an interest in property the transfer of which to a United States national required before March 12, 1996, or requires after March 12, 1996, a license issued by, or the permission of, any agency of the United States.

**(8) Publication by Attorney General**

Not later than 60 days after March 12, 1996, the Attorney General shall prepare and publish in the Federal Register a concise summary of the provisions of this subchapter, including a statement of the liability under this subchapter of a person trafficking in confiscated property, and the remedies available to United States nationals under this subchapter.

**(b) Amount in controversy**

An action may be brought under this section by a United States national only where the amount in controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees. In calculating $50,000 for purposes of the preceding sentence, the applicable amount under subclause (I), (II), or (III) of subsection (a)(1)(A)(i) may not be tripled as provided in subsection (a)(3).

**(c) Procedural requirements**

**(1) In general**

Except as provided in this subchapter, the provisions of Title 28 and the rules of the courts of the United States apply to actions under this section to the same extent as such provisions and rules apply to any other action brought under section 1331 of Title 28.

**(2) Service of process**

In an action under this section, service of process on an agency or instrumentality of a foreign state in the conduct of a commercial activity, or against individuals acting under color of law, shall be made in accordance with section 1608 of Title 28.

**(d) Enforceability of judgments against Cuban Government**

In an action brought under this section, any judgment against an agency or instrumentality of the Cuban Government shall not be enforceable against an agency or instrumentality of either a transition government in Cuba or a democratically elected government in Cuba.

# Add.10

**(e) Omitted**

**(f) Election of remedies**

**(1) Election**

Subject to paragraph (2)--

**(A)** any United States national that brings an action under this section may not bring any other civil action or proceeding under the common law, Federal law, or the law of any of the several States, the District of Columbia, or any commonwealth, territory, or possession of the United States, that seeks monetary or nonmonetary compensation by reason of the same subject matter; and

**(B)** any person who brings, under the common law or any provision of law other than this section, a civil action or proceeding for monetary or nonmonetary compensation arising out of a claim for which an action would otherwise be cognizable under this section may not bring an action under this section on that claim.

**(2) Treatment of certified claimants**

**(A)** In the case of any United States national that brings an action under this section based on a claim certified under title V of the International Claims Settlement Act of 1949--

**(i)** if the recovery in the action is equal to or greater than the amount of the certified claim, the United States national may not receive payment on the claim under any agreement entered into between the United States and Cuba settling claims covered by such title, and such national shall be deemed to have discharged the United States from any further responsibility to represent the United States national with respect to that claim;

**(ii)** if the recovery in the action is less than the amount of the certified claim, the United States national may receive payment under a claims agreement described in clause (i) but only to the extent of the difference between the amount of the recovery and the amount of the certified claim; and

**(iii)** if there is no recovery in the action, the United States national may receive payment on the certified claim under a claims agreement described in clause (i) to the same extent as any certified claimant who does not bring an action under this section.

**(B)** In the event some or all actions brought under this section are consolidated by judicial or other action in such manner as to create a pool of assets available to satisfy the claims in such actions, including a pool of assets in a proceeding in bankruptcy, every claimant whose claim in an action so consolidated was certified by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 shall be entitled to payment in full of its claim from the assets in such pool before any payment is made from the assets in such pool with respect to any claim not so certified.

## Add.11

**(g) Deposit of excess payments by Cuba under claims agreement**

Any amounts paid by Cuba under any agreement entered into between the United States and Cuba settling certified claims under title V of the International Claims Settlement Act of 1949 that are in excess of the payments made on such certified claims after the application of subsection (f) shall be deposited into the United States Treasury.

**(h) Termination of rights**

**(1) In general**

All rights created under this section to bring an action for money damages with respect to property confiscated by the Cuban Government--

**(A)** may be suspended under section 6064(a) of this title; and

**(B)** shall cease upon transmittal to the Congress of a determination of the President under section 6063(c)(3) of this title that a democratically elected government in Cuba is in power.

**(2) Pending suits**

The suspension or termination of rights under paragraph (1) shall not affect suits commenced before the date of such suspension or termination (as the case may be), and in all such suits, proceedings shall be had, appeals taken, and judgments rendered in the same manner and with the same effect as if the suspension or termination had not occurred.

**(i) Imposition of filing fees**

The Judicial Conference of the United States shall establish a uniform fee that shall be imposed upon the plaintiff or plaintiffs in each action brought under this section. The fee should be established at a level sufficient to recover the costs to the courts of actions brought under this section. The fee under this subsection is in addition to any other fees imposed under Title 28.

**CREDIT(S)**

(Pub.L. 104-114, Title III, § 302, Mar. 12, 1996, 110 Stat. 815.)

22 U.S.C.A. § 6082, 22 USCA § 6082
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

End of Document      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# Add.12

**Add.13**

United States Code Annotated

  Title 22. Foreign Relations and Intercourse

    Chapter 69A. Cuban Liberty and Democratic Solidarity (Libertad) (Refs & Annos)

      Subchapter III. Protection of Property Rights of United States Nationals (Refs & Annos)

22 U.S.C.A. § 6084

§ 6084. Limitation of actions

Effective: August 1, 1996

Currentness

An action under section 6082 of this title may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur.

**CREDIT(S)**

(Pub.L. 104-114, Title III, § 305, Mar. 12, 1996, 110 Stat. 821.)

22 U.S.C.A. § 6084, 22 USCA § 6084

Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Andrew Rhys Davies*
ANDREW RHYS DAVIES